**CLAMP MANUFACTURING COMPANY, INC., Plaintiff–Appellee,**

v.

**ENCO MANUFACTURING COMPANY, INC., Colex, Inc., Defendants–Appellants.**

No. 88–5559.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1989.

Decided March 14, 1989.

Seymour Rothstein, Charles C. Kinne, Allegretti and Witcoff, Ltd., Chicago, Ill., for Enco Mfg. Co. and Colex, Inc., defendants-appellants.

Allan Gabriel, Ronald M. St. Marie, Ervin, Cohen & Jessup, Beverly Hills, Cal., for Clamp Mfg. Co., plaintiff-appellee.

Before FARRIS, FERGUSON and BEEZER, Circuit Judges.

FARRIS, Circuit Judge:

Enco Manufacturing Co. appeals from the district court's judgment against it in favor of Clamp Manufacturing Co. Clamp sued Enco for trademark infringement of its clamps. Following a bench trial, the district court granted injunctive relief and damages to Clamp. We affirm.

## BACKGROUND

Clamp, a California corporation principally located in Los Angeles, manufactures and distributes clamps. Clamp and its predecessor, Saxton Manufacturing Co., have manufactured and distributed cantilevered "C" clamps in various sizes and styles since the early 1950's. A patent for the clamp, more precisely described as a "single screw actuated pivoted clamp," was issued in 1955 and expired in 1972.[1] In January 1974, Clamp obtained a trademark registration, valid for twenty years, for the term "KANT–TWIST." No. 977,118, Principal Register, U.S. Patent Office (noting 1954 as date of first use of clamp).

Enco, an Illinois corporation principally located in Chicago, manufactures and distributes machine tools, parts, and accessories. Colex, Inc., the additional defendant-appellant, was a California corporation principally located in Los Angeles and the wholly-owned West Coast subsidiary of Enco. Colex was merged into Enco following trial.

In 1976 or early 1977, Enco began purchasing and distributing a line of cantilevered "C" clamps manufactured in Korea. The clamps were virtually identical to the Kant-twist clamps manufactured by Clamp and were designated as "Enco NO–TWIST clamps" in the Enco sales catalog.

---

1. The district court found that the patent expired in December 1975. Enco asserted that the patent expired in 1972. That statement is supported by testimony from the head of Clamp, Philip Saurenman. Patents have a term of 17 years beginning the day after the patent is issued. 35 U.S.C. § 154; *Ballard & Ballard Co. v. Borden Co.,* 107 F.Supp. 41, 48 (W.D.Ky.1952). The patent, no. 2,726,694, was issued to John Saxton on December 13, 1955, and therefore expired on December 13, 1972.

In November 1977, Clamp wrote Enco demanding that Enco cease selling its No-twist clamps, because Enco's clamps were confusingly similar to Clamp's Kant-twist clamps. Enco refused, stating that the Clamp patent had expired and the "no-twist" term was used descriptively. In December 1977, Clamp again asked Enco to cease marketing its No-twist clamps; Enco did not respond.

Following the exchange of correspondence, Clamp took several actions in response to Enco's efforts. In May 1978, Clamp filed a complaint with the Federal Trade Commission, alleging the palming off of confusingly similar copies of its clamps by several wholesale distributors, including Enco. Clamp attempted to persuade its customers, through advertising and direct contacts, that its products were superior to those of Enco, and made changes to the appearance of some parts of its clamps. Clamp also sought incontestable status for its Kant-twist mark, including filing a required affidavit with the U.S. Patent Office stating that no litigation concerning its mark was pending. *See* 15 U.S.C. § 1065(2). Subject to certain exceptions, incontestable status provides the mark with a conclusive presumption of validity and prevents a defense to infringement on the grounds that the mark is merely descriptive. *See Park 'N Fly v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193–97, 205, 105 S.Ct. 658, 661–63, 667, 83 L.Ed.2d 582 (1985); 2 McCarthy, *Trademarks and Unfair Competition* § 32.44 (1984 and 1988 supp.).

In August 1982, after the FTC decided to take no action on Clamp's complaint, Clamp filed suit against Enco, Colex, and seven other machine tool supply companies, alleging infringement of its registered Kant-twist trademark, in violation of 15 U.S.C. § 1114(1) (§ 32(1) of the Lanham Act); infringement of its configuration trademark, false designation of origin, false description, and false representation, in violation of 15 U.S.C. § 1125(a) (§ 43(a) of the Lanham Act); and unfair competition and infringement of trademark rights under California law. The claims against the seven other defendants were withdrawn prior to the trial in October 1986. On August 10, 1987, Findings of Fact and Conclusions of Law were entered in favor of Clamp. *Clamp Mfg. Co. v. Enco Mfg. Co.*, 5 U.S.P.Q.2d 1643 (C.D.Cal.1987) [1987 WL 46520]. On November 24, 1987, the trial court awarded Clamp $578,689 plus prejudgment interest of $378,077 and issued a permanent injunction prohibiting Enco from using the No-twist name and from promoting or selling confusingly similar cantilevered "C" clamps. *Id.* at 1649.

## STANDARD OF REVIEW

The district court's decision denying laches is reviewed for abuse of discretion. *Russell v. Price*, 612 F.2d 1123, 1125 (9th Cir.1979), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980). Issues concerning the correct test to be used in evaluating trademark infringement are reviewed de novo. *Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 255 (9th Cir.1986). Mixed questions of fact and law that are largely fact-driven are reviewed under the clearly erroneous standard. *United States v. McConney*, 728 F.2d 1195, 1203–04 (9th Cir.) (en banc), *cert. denied* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The district court's findings of fact are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52(a). The clearly erroneous standard also applies to the district court's findings on the elements of infringement: nonfunctionality, secondary meaning, and likelihood of confusion. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir.1987) (functionality); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355–56, 1358 (9th Cir. 1985) (en banc) (likelihood of confusion, secondary meaning). The clearly erroneous standard means that the reviewing court will not disturb the district court's decision unless after reviewing all of the evidence the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

## DISCUSSION

### A. Laches

█ Enco argues that laches bars Clamp's recovery of monetary damages; Enco does not argue that laches also bars the injunctive relief granted by the district court. We recognize estoppel by laches as a valid defense to an infringement action on behalf of an incontestable trademark. *Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398, 1402 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988); *E–Systems, Inc. v. Monitek, Inc.,* 720 F.2d 604, 607 (9th Cir.1983) (laches may bar injunctive relief). A successful assertion of the defense requires Enco to show an unreasonable delay by Clamp in filing suit, with resulting prejudice to Enco. *See Whittaker Corp. v. Execuair Corp.,* 736 F.2d 1341, 1347 (9th Cir.1984); *E–Systems,* 720 F.2d at 607; 2 McCarthy at § 31.2. More specifically, a variety of factors are weighed: the strength and value of Clamp's trademark rights; Clamp's diligence in enforcing its mark; the harm to Clamp if relief is denied; whether Enco acted in good faith ignorance of Clamp's rights; competition between Clamp and Enco; and the harm suffered by Enco because of Clamp's delay. *See E–Systems,* 720 F.2d at 607.

The district court made no express findings or conclusions on Enco's laches defense. This court may assume that the district court's failure to discuss the laches defense is equivalent to a refusal, because there is no doubt that (1) the district court rejected the defense, and (2) a full understanding of the issue may be obtained from the district court's findings, which did address the relevant factors. *See Vance v. American Hawaii Cruise, Inc.,* 789 F.2d 790, 792 (9th Cir.1986). The district court found that (1) Clamp's trademark rights were strong, (2) Clamp acted promptly in writing to Enco, filing its FTC complaint, and filing suit after the FTC completed its investigation, (3) Clamp was damaged substantially by Enco's actions, (4) Enco was aware of Clamp's rights, and (5) Clamp and Enco were in direct competition. *Clamp Mfg.,* 5 U.S.P.Q.2d at 1645–46 (Findings of Fact 16–22, 25). The district court made no express finding concerning the harm suffered by Enco as a result of Clamp's delay. In finding that Enco was aware of Clamp's continuing objections and that No-twist clamp sales were less than .7% of its total sales, the district court implicitly determined that Enco suffered no harm. *See id.* (FOF 14, 23).

Enco argues that injury to it should be presumed if the waiting period exceeds that of the analogous statute of limitations period. Other circuits have applied such a presumption to reject a defense of laches when the delay period is less than the analogous statute of limitations. *See Ambrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1546 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987); *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 365–66 (6th Cir.1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986). This circuit has applied such a presumption only in patent cases, where the analogous statute of limitations, 35 U.S.C. § 286, runs for six years and explicitly limits the recovery period of damages for patent infringement. *See, e.g., Whitman v. Walt Disney Productions, Inc.,* 263 F.2d 229, 231–32 (9th Cir.1958). Even if we assume the district court was clearly erroneous in not presuming that Enco suffered harm as a result of Clamp's delay, the district court's findings on the other factors weigh against a determination of laches.[2] The district court's implicit conclusion that laches should not apply was not an abuse of discretion.

### B. Validity of the Clamp Configuration Trademark

█ The physical details and design of a product may be protected under the trademark laws only if they are nonfunctional and have acquired a secondary meaning. *Vuitton Et Fils S.A. v. J. Young Enter-*

---

2. Because application of the presumption of injury would not matter to the result here, we do not decide whether injury should be presumed if the delay in filing a trademark infringement suit exceeds the period of the analogous statute of limitations.

*prises,* 644 F.2d 769, 772 (9th Cir.1981). The burden of proving nonfunctionality is on Clamp. *See Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1506 (9th Cir.1987). Evidence of deliberate copying, present in this case, supports a determination of secondary meaning but does not in itself shift the burden of proving secondary meaning from Clamp to Enco. *See Fuddruckers,* 826 F.2d at 844.

### 1. *Functionality*

■ The requirement of nonfunctionality is based "on the judicial theory that there exists a fundamental right to compete through imitation of a competitor's product, which right can only be *temporarily* denied by the patent or copyright laws." *In re Morton–Norwich Products, Inc.,* 671 F.2d 1332, 1336 (C.C.P.A.1982) (emphasis in original). If the utilitarian aspects of the product are its essence, only patent law protects its configuration from use by competitors. *See Morton–Norwich,* 671 F.2d at 1338–40; *cf. Vuitton,* 644 F.2d at 776–77. *See generally* Annotation, *Application of Functionality Doctrine Under § 43(a) of Lanham Act,* 78 A.L.R.Fed. 712, 736–49 (1986). "Functional features of a product are features 'which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product.'" *Vuitton,* 644 F.2d at 774 (quoting *Int'l Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 917 (9th Cir.1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981)). For an overall product configuration to be recognized as a trademark, the entire design must be nonfunctional. *Textron, Inc. v. U.S. Int'l Trade Comm'n,* 753 F.2d 1019, 1025 (Fed.Cir.1985). "[T]he right to copy better working designs would, in due course, be stripped of all meaning if overall functional designs were accorded trademark protection because they included a few arbitrary and nonfunctional features." *Id.* To assist in analyzing functionality, several factors may be examined: the existence of an expired utility patent disclosing the utilitarian advantage of the design sought to be protected

as a trademark; the extent of advertising touting the utilitarian advantages of the design; the availability of alternative designs; and whether a particular design results from a comparatively simple or cheap method of manufacture. *Morton–Norwich,* 671 F.2d at 1340–41.

The district court found that Kant-twist clamps were distinctive, primarily nonfunctional, and arbitrary, and that commercially feasible alternative configurations exist. Clamp presented evidence of alternative designs and of the arbitrary nature of the clamp arm's shape, including the fact that Clamp made minor design variations in response to the competition from Enco. It also introduced expert testimony concerning a hypothetical design, and evidence of the existence of a non-identical German-made clamp. We therefore cannot find that the district court findings are clearly erroneous, even though another fact-finder could have reached the opposite conclusion.

We recognize that considerable support exists for a determination of functionality. Two of the factors cited in *Morton–Norwich* weigh strongly in Enco's favor. An expired utility patent exists and Clamp's advertising has heavily, if not exclusively, touted the utilitarian aspects of its product. The clamp is not designed in any arbitrary or distinctive manner, with the exception of minor variations in the shape of the clamp arms. Evidence shows that consumers purchased the product on the basis of its function. No evidence was presented that purchasers were aware of Clamp's design variations. Nor does the copying by Enco lessen the necessity for Clamp to prove its configuration nonfunctional. *See Vibrant Sales, Inc. v. New Body Boutique, Inc.,* 652 F.2d 299, 304 (2d Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed. 2d 448 (1982) (copying of waist reduction belt); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,* 626 F.2d 193, 195 (1st Cir.1980) (copying of wood stove except for nameplate). *But see Service Ideas, Inc. v. Traex Corp.,* 846 F.2d 1118, 1123–24 (7th Cir.1988) (copying of all functional elements of beverage server, including color); *Vaughan Mfg. Co. v. Brikam Int'l, Inc.,*

814 F.2d 346, 350 (7th Cir.1987) (copying of picnic table design, including colors and shapes of components). Nonetheless, Clamp presented sufficient evidence to sustain the district court's findings under the clearly erroneous standard. Although the issue is close we are not left with a definite and firm conviction that a mistake has been committed.

### 2. *Secondary Meaning*

█ A product configuration has secondary meaning if the purchasing public associates that configuration with a particular source. *See Fuddruckers,* 826 F.2d at 843. The factors to be assessed in determining secondary meaning include: whether actual purchasers of cantilevered clamps associate the configuration with Clamp; the degree and manner of Clamp's advertising; the length and manner of Clamp's use of the configuration; and whether Clamp's use of the configuration has been exclusive. *See Transgo v. AJAC Transmission Parts Corp.,* 768 F.2d 1001, 1015 (9th Cir.1985), *cert. denied* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). The district court determined that Clamp satisfied these factors.

█ Evidence of use and advertising over a substantial period of time is enough to establish secondary meaning. *See First Brands v. Fred Meyer, Inc.,* 809 F.2d 1378, 1383 (9th Cir.1987). *See generally* Annotation, *Application of Secondary Meaning Test in Action for Trade Dress Infringement Under § 43(a) of Lanham Act,* 87 A.L.R.Fed. 15, §§ 25, 32; Annotation, *Application of Secondary Meaning Test in Action for Trademark or Trademark Name Infringement Under § 43(a) of Lanham Act,* 86 A.L.R.Fed. 489, §§ 25, 31. *But see* Annotation, 87 A.L.R.Fed. at 75–76; Annotation, 86 A.L.R.Fed. at 554–55 (collecting cases holding secondary meaning not established where advertising was extensive but evidence as a whole did not show consumer association). The district court found that Clamp prominently featured the design configuration in its advertising and promotional efforts. This finding is supported by the record. Therefore the district court determination that secondary meaning was established is not clearly erroneous.

We recognize Enco's arguments for overturning the determination of secondary meaning. No evidence concerning the views of actual purchasers was presented. *Cf. Levi Strauss,* 778 F.2d at 1358 ("An expert survey of purchasers can provide the most persuasive evidence of secondary meaning."). Clamp failed to assert trademark rights in its configuration until this litigation was initiated. *See Textron,* 753 F.2d at 1027–28 (evidence of close copying entitled to little weight because trademark in design not asserted prior to litigation; circumstantial evidence of use of design in promotional materials unpersuasive; secondary meaning not shown). However, these arguments do not overcome the findings of the district court on use and advertising.

### C. *Infringement*

#### 1. *Likelihood of Confusion*

█ If Clamp is successful in establishing that its product configuration is entitled to trademark protection under 15 U.S. C. § 1125(a) by proving nonfunctionality and secondary meaning, it must then prove that Enco's use of a similar configuration is likely to confuse consumers. *See Fuddruckers,* 826 F.2d at 837; 2 McCarthy, *supra* at 42–48. Determining whether confusion between related products is likely involves analysis of the following factors: strength of Clamp's mark; similarity of the marks; evidence of actual confusion; marketing channels used; type of goods and degree of care likely to be exercised by purchaser; and Enco's intent in selecting the marks. *See Levi Strauss,* 778 F.2d at 1359, n. 8; *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979). The district court determined that confusion was likely. Its determination is supported by substantial evidence satisfying the factors cited: the similarity of the products, the manner of sale through catalog and telephone orders, and Enco's intentional copying of the Clamp design and promotional materials. Although Enco may

be correct in disputing whether the "entrapment" efforts of Clamp constitute evidence of actual confusion, the district court's determination that confusion is likely is not clearly erroneous.

■ We apply a similar analysis to Clamp's claim under 15 U.S.C. § 1114(1)(a) that its registered mark was infringed by Enco's use of the term "no-twist." *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir.1986) ("beer nuts" infringed by "brew nuts"). Confusing similarity may exist if the two terms convey the same idea or meaning. *Id.*; 2 McCarthy, *supra*, at § 23.8. Enco argues that the Kant-twist mark is not protected because it is merely descriptive and that the "entrapment" efforts of Clamp do not prove that consumers were confused. Because the Kant-twist mark is incontestable Enco may not defend against an infringement action on the basis that the mark is merely descriptive. *Park 'N Fly*, 469 U.S. at 205, 105 S.Ct. at 667. As with the product configuration claim, even if the "entrapment" evidence is rejected as evidence of actual confusion, the weight of the other factors is in Clamp's favor. The district court's determination is not clearly erroneous.

### 2. *Fair Use*

Enco's fair use defense must satisfy one of the elements of 15 U.S.C. § 1115(b) (§ 33(b) of the Lanham Act). Enco relies on § 1115(b)(4), which allows the use of a term "which is descriptive of and used fairly and in good faith only to describe to users the goods...." The district court's finding that Enco used the term "no-twist" as a trademark is supported by substantial evidence. The district court was not clearly erroneous in rejecting the fair use defense.

### 3. *Additional Claims*

■ Clamp also asserted a claim under the false representation/unfair competition prong of 15 U.S.C. § 1125(a). *See* 2 McCarthy, *supra*, at 344, 364–68 (two prongs of § 43(a) of Lanham Act). The district court concluded that Enco violated the false representation/unfair competition prong. Clamp has proved that confusion is likely. The fact that Enco labelled its clamps with its name does not outweigh Enco's conduct in copying the exact sizes of the Clamp product line and Clamp's promotional materials, given the broad protection provided by this portion of the statute. *See Smith v. Montoro*, 648 F.2d 602, 605–06 (9th Cir. 1981); *Tveter v. AB Turn–O–Matic*, 633 F.2d 831, 838–39 (9th Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed. 2d 300 (1981). The district court's determination of false representation is not clearly erroneous.

### CONCLUSION

We uphold the district court's implied rejection of the laches defense as properly within its discretion, although the findings and conclusions should have addressed more directly this potentially valid defense. The district court's determinations that Clamp possesses a valid product configuration trademark and that Enco engaged in false representation are not clearly erroneous.

AFFIRMED.