MOUNTAIN SAFETY RESEARCH, INC.,
a Washington corporation, Plaintiff,

v.

COLEMAN OUTDOOR PRODUCTS, INC.,
a Delaware corporation; The Coleman
Company, Inc., a Delaware corporation;
and New Coleman Holdings, Inc., a Kan-
sas corporation, Defendants.

No. C91–1674C.

United States District Court,
W.D. Washington,
at Seattle.

June 9, 1993.

Paul T. Meiklejohn, L. Grant Foster, Seed & Berry, Seattle, WA, for plaintiff Mountain Safety Research, Inc., a Wash. Corp.

M. Margaret McKeown, Gregory J. Wrenn, Perkins Coie, Seattle, WA, John W. Chestnut, Tilton Fallon Lungmust & Chestnut, Chicago, IL, for defendants Coleman Co. Inc., a Kan. Corp., Coleman Outdoor Products, Inc., a Del. Corp.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COUGHENOUR, District Judge.

This matter is before the Court on defendants' motion for summary judgment. After hearing oral argument on May 5, 1993 and having reviewed all relevant documents, the Court finds and rules as follows:

### I. Factual Background

This suit is about lightweight camping stoves. Plaintiff, Mountain Safety Research ("MSR"), manufactures several models of stoves, including the highly successful Whisper Lite. According to plaintiff, the attraction to backpackers is the Whisper Lite's light weight and ease of assembly.

The patent which gave MSR exclusive use of certain features on the Whisper Lite expired in August, 1992. Roughly four months previously, however, defendant Coleman Outdoor Products began selling its Apex stove, which is similar in design to the Whisper Lite. Defendants' Exhibits 30, 46. Plaintiff subsequently filed this action, asserting federal and state claims for violation of its patent rights. Plaintiff also seeks to enjoin defendants from producing the Apex stove, despite expiration of its patent, on the grounds that it is so similar to the Whisper Lite that it violates its unregistered configuration trademark.

### II. Discussion

There are two principal issues raised by defendants' summary judgment motion: (1) whether the design of the Apex stove is

functional, thus precluding a suit for configuration trademark infringement; and (2) whether the Apex stove violated MSR's patent prior to its expiration in August, 1992. In addition, the parties have briefed the issue of whether plaintiff's state law claims are preempted by federal law. Each issue is discussed in turn.

### A. Configuration Trademark: Functionality

MSR's patent expired on August 19, 1992. As such, the central issue in this litigation is whether plaintiff may enjoin production of defendants' Apex stove for violating its configuration trademark. Plaintiff argues that its stoves are sufficiently similar to defendant's Apex stove to create consumer confusion. Defendants counter that the Apex stove duplicates only the functional benefits of plaintiff's stoves, and thus cannot infringe plaintiff's configuration trademark.

■ Under the law of trademark infringement, the physical details and design of a product are protected from duplication by others only if they are nonfunctional and have acquired a secondary meaning. *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 515 (9th Cir.1989). In *Clamp*, the Ninth Circuit summarized the principles underlying the common law of functionality as follows:

> The requirement of nonfunctionality is based on the judicial theory that there exists a fundamental right to compete through imitation of a competitor's product, which right can only be *temporarily* denied by the patent or copyright laws. If the utilitarian aspects of the product are its essence, only patent law protects its configuration from use by competitors. Functional features of a product are features which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product. For an overall product configuration to be recognized as a trademark, the entire design must be nonfunctional. The right to copy better working designs, would, in due course, be stripped of all meaning if overall functional designs were accorded trademark protection be-

cause they included a few arbitrary and nonfunctional features.

*Clamp*, 870 F.2d at 516 (citations and quotations omitted, emphasis in original). Moreover, where the purported configuration is unregistered, the burden of proving nonfunctionality of the design is on the plaintiff. *Id.*

■ The *Clamp* court also set forth several factors to be considered when analyzing functionality: (1) the existence of an expired utility patent disclosing the utilitarian advantage of the design sought to be protected as a trademark; (2) the extent of advertising touting the utilitarian advantages of the design; (3) the availability of alternative designs; and (4) whether a particular design results from a comparatively simple or cheap method of manufacture. *Id.*

#### 1. Expired Utility Patent Disclosing Functional Advantage of Design

Plaintiff's stoves are characterized by having a separate burner assembly and a horizontal fuel tank connected by a fuel tube. Ligrano Declaration, Exhibits 1–2. An air pump assembly is mounted in the opening of the fuel tank for pressurizing the fuel tank with air, and a fuel valve is mounted on the pump assembly for controlling the flow of pressurized fuel from the tank to the burner. *Id.* The fuel tube is disconnectable from the pump assembly so that the components can be separately packed. The fuel tank initially used by MSR was a conventional fuel tank made by Sigg, Inc. Deposition of Larry Penberthy, pp. 21–22.

Defendants argue that the description of the stove in MSR's Patent No. 3,900,281 clearly establishes the functional nature of the stove design. Plaintiff's patent description is lengthy, but the functional features it touts can be summarized as follows:

(1) a separate burner assembly and fuel tank that are connected by a fuel tube;

(2) an air pump housing that screws into the neck of the fuel tank for pressurizing the fuel tank with air;

(3) a fuel tube that is releasable from the pump housing to enable quick disassembly of the fuel tank from the burner;

(4) an empty fuel tank that can be replaced with a full fuel tank to eliminate the hazard of pouring fuel into the tank;

(5) a fuel valve that is located on the fuel tank at least 4 inches away from the heat of the burner so that a camper can adjust the flame without having his or her hand close to the heat.

Defendants' Exhibit 83.

■ According to plaintiff, the patent states that the fuel bottle can be upright; however, its stove has a horizontal fuel bottle. Plaintiff further argues that the patent makes no reference to the color of the fuel bottle, which on both stoves is red. Plaintiff's arguments on this point are misplaced, as they concern the overall similarity of the design, not whether MSR's patent touts functional advantages. Even if they were relevant, however, plaintiff's contentions would lack merit. First, whether the fuel tank is horizontal or vertical cannot reasonably be considered the difference between overall functionality and nonfunctionality of the Apex stove design. Safety concerns would seem to dictate that the fuel bottle be horizontal because a cylinder standing on end would be less stable. Indeed, the safety benefits of a horizontal fuel tank were attested to by the founder of MSR and the patent's inventor, Mr. Penberthy, in his deposition. Penberthy Dep. p. 34–35. Second, the fact that defendants' fuel bottles are red, as are plaintiff's, does not destroy the functionality of defendants' stove design. On the contrary, the color red is often used to connote caution, and surely caution is required when handling a tank containing pressurized gas.

The Court concludes that plaintiff's patent touted many functional aspects of its stove design, and that no genuine issue of fact remains on this point. *See* Fed.R.Civ.P. 56(c).

2. Advertising Touting the Utilitarian Advantages of Plaintiff's Stoves

Defendants cite several examples where plaintiff's advertising boasts of various functional advantages of its camping stoves. Defendants' Opening Memorandum at 9, citing Defendants' Exhibits 58, 70, and 79. In particular, plaintiff's advertisements emphasized the safety advantages of the separate burner housing and fuel tank, the accessibility of the control valve, and the stability benefits of a horizontal fuel tank. *Id.*

■ Plaintiff's only response is that MSR advertising has also touted the overall configuration of its design. According to plaintiff, "[v]irtually all MSR advertisements include attractive photographs of the MSR stoves associated with attractive, exciting locales." Plaintiff's Memorandum, p. 12. This argument is not well taken, however, as it hardly requires citation to authority to note that merely including photographs of a product in advertisements is insufficient to create an unregistered configuration trademark. Indeed, virtually all advertising includes a depiction of the product being promoted. The Court finds that plaintiff's advertising touted the utilitarian advantages of the stove design in dispute.

3. Availability of Alternative Designs

■ Plaintiff's primary argument on the issue of functionality is that defendants' Apex stove cannot be functional because other successful stoves are on the market that do not resemble the Whisper Lite. Moreover, plaintiff argues that defendants knew of alternative design possibilities because they presented defendants with proposed alternatives during the course of this litigation. This argument obfuscates the issue: the question is not whether alternative designs exist, but rather, whether equally functional alternatives exist which are as easily and cheaply manufacturable as plaintiff's stove. *Clamp,* 870 F.2d at 516. Thus, contrary to plaintiff's contention, the fact that alternative designs were available to defendants does not lead inexorably to the conclusion that defendants have infringed plaintiff's unregistered configuration trademark.

Because plaintiff's proposed alternative designs were filed under seal, the Court will not discuss these designs in depth. Instead, it will suffice to note that the only significant difference between the proposed alternatives and the Apex are the shape of the fuel tanks: the burners are virtually identical to the Apex burner.

In response, defendants dispute plaintiff's representation that four alternative designs were suggested during settlement discussions. According to defendants, plaintiff proposed only two designs during settlement discussions, with the other two being filed under seal as "Confidential Attorney's Eyes Only." Defendants also submit a memorandum in which Mr. Copeland, a senior design engineer with Coleman Outdoor Products, responded to plaintiff's first alternative design suggestion. In the memorandum, Mr. Copeland opined that plaintiff's first proposed alternative is heavier and more expensive, has less fuel capacity, and is less manufacturable than the Apex stove. Copeland Affidavit. Plaintiff then countered with a second alternative design, but Mr. Copeland again rejected that design as heavier, more expensive, bulkier, and less stable than the Apex stove. *Id.*

Plaintiff also reiterates its contention that there are many camping stoves on the market bearing no resemblance to the Whisper Lite, thus demonstrating that defendants' Apex stove need not resemble the Whisper Lite to be successful. Defendants acknowledge that there are other successful camping stoves on the market. According to defendants, however, the shape of the MSR Whisper Lite stove made it the lightest and most compactable white gas stove on the market. These features, defendants argue, made the Whisper Lite the best-selling specialty backpacking stove before Coleman introduced its Apex stove. Defendants urge that because MSR's patent has expired, the features which made the Whisper Lite successful should now be available to competitors, regardless of whether less successful stove designs are on the market.

The Court finds unpersuasive plaintiff's argument that other camping stove designs exist demonstrates that defendants need not copy its design. Again, the issue is whether equally functional design alternatives exist, and plaintiff has failed to produce any evidence that such an alternative design exists. As plaintiff's proposed alternative designs demonstrate, at the heart of plaintiff's trademark infringement claim is the similarity between its fuel tank and the Apex stove's fuel tank. However, a horizontal tank is not a gratuitous design feature; it undoubtedly adds stability. As such, the horizontal tank on defendants' Apex stove serves a functional purpose. And because the basic design of the burner assembly is not at issue, the Court finds it difficult to envision how defendants could have designed a camping stove of equal ease of assembly and compatible with varying fuel tank sizes without emulating plaintiff's Whisper Lite.

### 4. Simplicity and Cost of Design

The last consideration under *Clamp* is whether the disputed design results from a comparatively simple or cheap method of manufacture. The Court finds that, at least with respect to the simplicity issue, plaintiff has failed to produce any evidence sufficient to create a genuine issue of material fact.

Defendants point out that an important feature of a backpacking stove is weight. According to defendants, the cheapest and best method of manufacturing a separate fuel tank as light as plaintiff's fuel tank is impact extrusion, and the only company in the United States which can impact extrude such a tank is Cliff Impact. Defendants argue, and plaintiff does not dispute, that the impact extruded tank used for the Apex stove is the lightest and cheapest fuel tank in the entire line of Coleman stoves.

Despite plaintiff's assertions to the contrary, the Court concludes that the stove design in dispute is comparatively simple. Indeed, as observed above with regard to alternative designs, it is difficult to image a simpler camping stove design given that there are only three component parts: the burner assembly, fuel tank, and fuel hose. First, plaintiffs have not submitted any evidence that fuel tank on the Apex stove is not the product of a simple design. Next, the basic shape and features of the burner assembly are not challenged by plaintiff, and are clearly simple. Lastly, because the burner assembly is separate from the fuel tank, there must be a fuel hose for the stove to function. Defendants have not demonstrated that any of these component parts, individually or collectively, are not the product of a comparatively simple design.

As for the relative cost to produce the Apex stove, each side presents conclusory affidavits and declarations to support its position. Nonetheless, even assuming a genuine issue of material fact remains as to whether the Apex stove is the cheapest design alternative, plaintiff cannot survive summary judgment. As *Clamp* makes clear, the cost of producing a product is only one of several factors to be weighed by the Court, and plaintiff cites no cases where a plaintiff has prevailed on a trademark infringement action solely on the basis of cheaper design alternatives.

In sum, after weighing the factors to be considered when determining whether a disputed design is functional, the Court concludes that the similarities between the design of plaintiff's stoves and defendants' Apex stove are functional ones, and that the copied features are those "which constitute the actual benefit that the consumer wishes to purchase ..." *Clamp*, 870 F.2d at 816. Because the evidence adduced demonstrates that plaintiff would be unable to meet its burden of demonstrating nonfunctionality at trial, defendants are entitled to summary judgment on the trademark infringement claim.

## B. Patent Infringement

The patent in dispute here expired in August of 1992. Defendants began selling their Apex stove in May of 1992. Accordingly, plaintiff's patent infringement claim concerns roughly 3½ months of sales.

As a look at the diagrams submitted and the stoves produced at oral argument reveals, the basic design of the Apex stove is strikingly similar to plaintiff's stove. There are, however, two principal differences, the significance of which is disputed by the parties. First, the amount of fuel used by plaintiff's stove (flame height) is controlled by a fuel control valve located at the top of the fuel tank. Ligrano Declaration, Exhibits 1 and 2. By comparison, the flame height on defendants' Apex stove is regulated by a flame adjuster lever at the base of the burner assembly, although there is an on-off fuel valve at the top of the Apex fuel tank. Defendants' Exhibit 46. Second, plaintiff's

stove is disconnected by separating the fuel hose from the tank, whereas defendants' stove is disconnected by removing the fuel hose from the burner assembly. *Id.* The principal difference, therefore, between the disassembled Whisper Lite and Apex is to which of the two major components the fuel hose connects: with the Whisper Lite, it is the burner assembly; with the Apex, the fuel tank.

As plaintiff points out, defendants discontinued plans to produce the first version of their Apex stove after plaintiff's counsel sent a letter specifying the patent claims which it allegedly infringed. In response, defendants conceded that "those claims probably cover the sample devises." Plaintiff's Memorandum in Opposition to Summary Judgment, Exhibit B. Defendants then made design alterations, most notably, changing the connecting point for the fuel hose from the fuel tank to the burner assembly. Following these changes, defendants manufactured and distributed this second version of the Apex stove.

 Plaintiff claims that the fuel control valve on the Apex stove literally infringed claim 5 of its patent. Specifically, the relevant portion of **CLAIM 5** of plaintiff's now expired patent asserted protection for:

> ... a valve carried by said closure member for **controlling the flow of fuel** through said outlet passage and said fuel tubes to said burner assembly, ...

Defendants' Exhibit 83.

In response, defendants contend that the valve on the Apex stove is merely an on-off valve, and thus does not "control[ ] the flow of fuel." Plaintiff retorts that this argument is equivalent to claiming that a light switch does not control the flow of electricity merely because it turns a light on and off. After reviewing the evidence submitted, the Court concludes whether the control valve on the Apex stove "controls the flow of fuel" within the meaning of claim 5 of plaintiff's patent is an issue of material fact not appropriately resolved on a motion for summary judgment.

 Plaintiff also argues that the Apex stove infringed claim 1 of its patent under the doctrine of equivalents. Under that doc-

trine, a product infringes a patent if it performs substantially the same function in substantially the same way to obtain the same result as the claimed invention. *See Graver Tank Mfg. Co. v. Linde Air Prod. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). Here, plaintiff's claim specified the apparatus allowing for easy disconnecting of the fuel tank from the house and burner assembly. The relevant portion of **CLAIM 1** of MSR's patent protected:

■ a valve by said housing for controlling the flow of fuel through said outlet passage and said fuel tube to said burner assembly, ■ means for **releasably connecting** said fuel tube and said housing whereby said housing and said fuel container are separable from said burner assembly, and [3] said **releasably connecting** means including a clamp having a clamping element carried by one of said fuel tube and said housing and a **keeper** carried by the other of said fuel tube....

Defendants' Exhibit 83. As discussed above, the Apex differs from plaintiff's stoves in that the fuel hose is attached at the burner assembly as opposed to the fuel tank.

Plaintiff focuses on the fact that the Apex stove has a keeper at the base of the stove below the burner assembly, and that the clamp on the fuel tube is "kept" on this keeper. This arrangement, plaintiff argues, is substantially equivalent to the claim language and therefore infringed under the doctrine of equivalents.

In response, defendants deny that the Apex stove literally or equivalently infringed claim 1. According to defendants, no infringement occurred because the Apex's fuel tube is not releasably connected to the pump housing as required by both claims, and that the Apex does not include a clamp or a keeper on either the fuel tube or the pump housing referred to in claim 1. However, as with claim 5, the Court finds that defendants have not submitted evidence sufficient to warrant granting summary judgment on whether the Apex stove literally infringed claim 1 of MSR's patent.

■ Defendants further argue that plaintiff is estopped by prosecution history from arguing that the Apex stove infringed under the doctrine of equivalents. Stated succinctly, prosecution history estoppel limits a patent applicant's subsequent reliance on the doctrine of equivalents by preventing her from contending later in an infringement action that her claims should be interpreted as if limitations added by amendment were not present. *Townsend Engineering Co. v. Hitec. Co.,* 829 F.2d 1086, 1090 (Fed.Cir.1987).

■ Here, Mr. Penberthy, the inventor of MSR's patent, originally attempted to obtain patent claims which did not describe the releasable connection between the fuel tube and the pump housing. Defendants' Exhibit 84. The patent examiner, however, rejected claims 1 and 3 as unpatentable because other patents had been previously issued on similar features. *Id.* at 29–30. Mr. Penberthy then rewrote several provisions, which became claims 1 and 5 of the patent quoted above. *Id.* at 33–35. These amendments emphasize that the location of the fuel control valve for regulating flame height is on the fuel tank rather than on the burner, thereby placing the valve at least two inches from the burner. *Id.* The amendments also distinguish MSR's patent from the previous patent designs by highlighting the releasable connection between the fuel tube and the pump housing which closes the fuel tank. *Id.*

■ According to defendants, these amendments create a prosecution history estoppel which limits the interpretation of the claims and prevents MSR from arguing that the Apex stove infringes the claims under the doctrine of equivalents. This argument is unpersuasive. When determining whether prosecution history estoppel bars an equivalent infringement claim, a court must consider not only the change in claim language during prosecution, but the reason for the change. *Sun Studs, Inc. v. ATA Equip. Leasing,* 872 F.2d 978, 987 (Fed.Cir.1989) (prosecution history estoppel applies only where change made to avoid prior art). Here, it is unclear from the evidence adduced whether the claimed invention was distinguishable from previous patents. Furthermore, defendants have not convincingly demonstrated that the amendments to the claims were made to avoid prior art. Defendants

have thus not persuasively shown that they are entitled to summary judgment on the basis of prosecution history estoppel.

In sum, the Court concludes that genuine issues of fact remain as to whether the Apex stove infringed, both literally and equivalently, on plaintiff's patent prior to its expiration.

## C. Plaintiff's State Law Claims

 Defendants contend that regardless of whether the Court grants summary judgment on the federal claims, plaintiff's state law claims must be dismissed as preempted by federal law. In fact, this issue turns entirely on whether defendants are found to have violated federal law. *See generally, Sears, Roebuck & Co., v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). Accordingly, plaintiff's state law claims related to trademark infringement are dismissed, but summary judgment as to the state law claims based upon defendants' alleged patent infringement is denied.

## III. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART as follows:

(1) Defendants' motion for summary judgment is GRANTED as to plaintiff's trademark infringement claim and related state law claims.

(2) Defendants' motion on plaintiff's patent claims is DENIED.