**ACI INT'L. INC.**

v.

**ADIDAS–SALOMON AG, et al.**

**No. CV 04–9730PJWX.**

United States District Court,
C.D. California.

March 4, 2005.

Adidas: Jerre Swann and Charles Henn, Jr., Kilpatrick Stockton LLP, Atlanta, GA, Yakub Hazzard at Alschuler Grossman Stein & Kahan LLP, Santa Monica.

ACI: Terry Clark & Frank Merideth, Greenberg Traurig, Santa Monica.

## RULING ON COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS

FEESS, District Court.

The present motion address causes of action set forth in a counterclaim filed by defendant adidas-Salomon AG and adidas, America, Inc., ("adidas") alleging that Plaintiffs and counter-defendants, ACI International and Ocean Pacific Apparel Corp. (collectively "ACI"), have offered for sale and sold shoes bearing features that are confusingly similar imitations of adidas' trademark diagonal three stripes. ACI now moves the Court pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss adidas' counterclaims on the theory that there is not, and cannot be, any actionable consumer confusion, nor dilution regarding the source of ACI's two-stripe shoes. After considering the moving papers, the Court concludes that this motion is capable of resolution without the argument of counsel. Accordingly, the Court hereby **VACATES** the March 7, 2005 hearing now scheduled in this matter. *See* FED. R. CIV. P. 78; Local Rule 7–15. For the reasons set forth below, the Court **DENIES** ACI's motion to dismiss adidas' counterclaims.

## I. BACKGROUND

Adidas alleges the following facts in its counterclaim.

Adidas manufactures and distributes athletic footwear, sportswear, and sporting equipment. Adidas is one of the world's leading brands of athletic footwear, sportswear, and sporting equipment. More than fifty years ago, adidas first placed three parallel bands on its athletic shoes, and this "Three–Stripe Mark" came to signify the quality and reputation of adidas footwear to the sporting world. (Countercl.¶ 10). Adidas is the owner of multiple federal trademark registrations, issued by the PTO, for the Three–Stripe Mark

for "athletic footwear." (*Id.* ¶¶ 12–15). The Three Stipe Mark is well-known and famous because it is consistently used in connection with frequent sponsorship of sports tournaments and organizations, professional athletes and collegiate sports teams. (*Id.* ¶ 16) Since introducing the Mark, adidas has spent millions of dollars promoting the mark and products bearing the mark. (*Id.* ¶ 20). As a result of adidas' extensive and continuous use and promotion of the Three–Stripe Mark, adidas has built up and now owns valuable goodwill that is symbolized by the Mark. (*Id.* ¶ 21).

ACI designs, sources, imports, markets and sells footwear. ACI is offering for sale and selling goods in interstate commerce, pursuant to a license agreement with OP, that bear confusingly similar imitations of adidas' Three–Stripe Mark and are essentially two-stripe imitations of adidas' shoes. (*Id.* ¶¶ 28–29). ACI has intentionally designed the shoes to mislead and deceive consumers into believing they were sold, authorized, or licensed by adidas. (*Id.* ¶ 30).

In 2001, pursuant to a license agreement with B.U.M. International, ACI offered for sale and sold two and four-stripe footwear. In 2001, adidas filed suit against ACI and two other parties in the District of Oregon claiming trademark and trade dress infringement, and unfair competition arising out of defendants' sale of the two and four-stripe footwear. (*Id.* ¶ 23). *See Adidas-Salomon AG v. Target Corp.,* 228 F.Supp.2d 1192 (D.Or.2002). On February 18, 2003, ACI and adidas ultimately settled the dispute and entered into a Settlement Agreement. In the Settlement Agreement, ACI agreed not to sell the two and four-stripe B.U.M. shoes and further agreed to "cease and permanently refrain from displaying, selling or offering for sale . . . any footwear bearing the Three–Stripe Mark or any confusingly similar imitation thereof." (*Id.* ¶ 27; Ex. 7).

Adidas' counterclaim alleges six counterclaims against ACI and OP for trademark infringement, dilution, unfair competition, and deceptive trade practices arguing that the two striped shoe sold by ACI, under license from OP, violates the adidas Three–Stripe Mark. Additionally, adidas alleges that ACI's display, sale and offer for sale of two-stripe shoes constitutes a willful breach of the parties' 2003 Settlement Agreement, which specifies that ACI will not display, sell or offer for sale any shoes bearing the Three–Stripes Mark or a confusingly similar imitation of the mark. (Mot at 3; Opp. at 1).

## II. LEGAL STANDARD

A motion to dismiss a complaint tests the legal sufficiency of the claims asserted. FED. R. CIV. P. 12(b)(6). A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). As noted above, the Court accepts all factual allegations pleaded in the complaint as true in deciding a motion to dismiss for failure to state a claim; in addition, it construes those facts and draws all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996).

## III. Trademark Infringement and Unfair Competition Claims

To prevail on a trademark infringement claim, a plaintiff must show that the

defendant used the plaintiff's trademark "in commerce" and "that the use was likely to confuse customers as to the source of the product." *Karl Storz Endoscopy–Amer., Inc. v. Surgical Technologies, Inc.,* 285 F.3d 848, 853–854 (9th Cir.2002).

The ultimate test for unfair competition is exactly the same as for federal trademark infringement, that is "whether the purchaser is likely to be deceived or confused by the similarity of the marks." *Interstellar Starship Servs. Ltd. v. Epix, Inc.,* 184 F.3d 1107, 1110 (9th Cir.1999); *Surgical Technologies. Inc.,* 285 F.3d at 853–854 (" '[l]ikelihood of confusion' is the basic test for ... trademark infringement.' " (citations omitted)). "The law in the Ninth Circuit is clear that 'post-purchase confusion,' *i.e.,* confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can establish the required likelihood of confusion under the Lanham Act." *Id.* " 'Post-sale' confusion ... may be no less injurious to the trademark owner's reputation than confusion on the part of the purchaser at the time of sale." *Id.* In addition, "use of another's trademark in a manner calculated 'to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may be still an infringement.' " *Brookfield Communications Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1062 (9th Cir.1999).

Factors relevant to determining likelihood of confusion include: the strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, type of goods and the degree of care likely to be exercised by the purchaser, defendant's intent in selecting the mark, and likelihood of expansion of the product lines. *AMF Inc., v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979). "Although some factors—such as the similarity of the

marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of factors." *Brookfield Communications Inc. v. West Coast Enterm't Corp.,* 174 F.3d 1036, 1054 (9th Cir.1999). Moreover, "intent to confuse consumers is not required for a finding of trademark infringement ... the lack of intent by a defendant is largely irrelevant in determining if consumers likely will be confused as to source." *Brookfield,* 174 F.3d at 1059.

ACI contends adidas is improperly seeking a monopoly on the use of horizontal stripes on the sides of shoes and argues that adidas' claims should be dismissed because they are plead in conclusory fashion, the Three–Stripe Mark is not a strong mark, and as a matter of law, a two-stripe design on the side of a casual shoe bearing the name and logo of OP cannot be confusingly similar to adidas' Three–Stripe Mark. (Mot. at 9; Reply at 7); *Murray v. Cable Nat'l Broadcasting Co.,* 86 F.3d 858, 860 (9th Cir.1996). The Court disagrees. On the face of its complaint, adidas has properly plead all necessary elements for the infringement and unfair competition claims.

Adidas alleges that the Three–Stripe Mark is strong and entitled to broad protection by citing to various incontestable federal registrations (Countercl.¶ 11), showing the Mark is used in connection with numerous high-profile sports tournaments, organizations, and athletes (*Id.* ¶ 16). In addition, adidas alleges that the Mark is the subject of unsolicited media coverage (*id.* ¶ 17), generates sales total in the billions of dollars globally (*id.* ¶ 19), and that adidas has spent millions of dollars promoting the Mark. (*Id.* ¶ 20). These allegations are satisfactory at this stage in the proceedings. ACI attempts

to argue that due to the "crowded field for stripes on shoes," each member of this crowd "is relatively weak in its ability to prevent use by others in the crowd." (Reply at 8). Whether or not adidas' Three–Stripe Mark is strong enough in the marketplace for ultimate success on its counterclaim is a factual issue requiring determination as to the merits, which is premature at this stage.

Adidas sufficiently alleges that ACI's two-stripe design is likely to be confused with the three-stripe mark, including a likelihood of initial-interest, point-of-sale, and post-sale confusion, such that the Court will not determine likelihood of confusion as a matter of law. The Court expressly rejects ACI's argument that confusion cannot occur because its shoe has two stripes instead of three and has the letters "OP" on the heel. The Ninth Circuit applies a pliant multi-factor likelihood of confusion test and only *one* of the factors is the degree of similarity between the parties' marks. In a similar case in Oregon involving ACI sales of four-stripe shoes, the Oregon Court expressly rejected the "two does not equal three" mathematical argument when ACI asserted it with regard to the four-stripe shoes. *Adidas–Salomon AG*, 228 F.Supp.2d at 1211. Specifically, the Court stated, "[a]lthough Three–Stripes obviously do not equal four stripes, the issue is not simply the number of stripes. Instead, the issue is whether the total effect of the allegedly infringing design is likely to cause confusion in the minds of an ordinary purchaser." *Id.* The Court also rejected the contention that applying a brand name to the heel would prevent confusion. *Id.* at 1211–1212 ("The

mere fact that the B.U.M. shoes display the B.U.M. registered trademark does not automatically insulate defendants from liability."); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 846 n. 13 (9th Cir.1987) ("Use of differing names or distinctive logos in connection with similar marks can reduce the likelihood of confusion but doesn't always do so [and][t]he issue is properly part of the factual determination left to the jury.").

Accordingly, for the reasons stated above, ACI's motion to dismiss adidas' federal and state claims for infringement and unfair competition is **DENIED**.

### IV. Dilution

■ To state a claim for violation of the federal and California anti-dilution statutes, adidas must show that (1) its mark is famous, (2) ACI is making a commercial use of a mark in commerce, (3) ACI's use began after the Three–Stripe Mark became famous, and (4) ACI's use erodes the distinctive quality of the Three–Stripe Mark by diminishing its capacity to identify and distinguish goods and services. 15 U.S.C. § 1125(c); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir.1999).[1] The Federal Trademark Dilution Act ("FTDA") defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of 1) competition between the owner of the famous mark and other parties, or 2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. In order to be famous, a mark must be more than distinctive. *See Avery Dennison Corp.*, 189 F.3d at

---

**1.** California's dilution cause of action is substantially similar to the Federal Trademark Dilution Act (the act), providing relief if the plaintiff can demonstrate a likelihood of injury to business reputation or of dilution of the distinctive quality of a mark, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services. Cal. Bus. & Prof.Code § 14330. "The court has interpreted § 14330, like the act, to protect only famous marks." *Avery Dennison Corp.*, 189 F.3d at 874.

874. As the Ninth Circuit noted, "if dilution protection were accorded to trademarks based only on a showing of inherent or acquired distinctiveness, we would upset the balance in favor of over-protecting trademarks, at the expense of potential non-infringing uses." *Id.* To meet the "famousness" element of protection under the dilution statutes, "'a mark [must] be truly prominent and renowned.'" *Id.* at 875 (quoting *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 46 (1st Cir.1998)). This makes trademark dilution analysis fundamentally different from trademark infringement analysis.

■ The FTDA lists eight non-exclusive considerations for the famousness inquiry, 15 U.S.C. § 1125(c)(1)(A)-(H), which are equally relevant to a famousness determination under Business and Professional Code § 14330.[2] *See Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir. 1998) ("Panavision's state law dilution claim is subject to the same analysis as its federal claim."). ACI argues, quite implausibly, that the dilution claim should be dismissed at this early stage in the proceedings because the two-stripe design is not sufficiently similar to the Three–Stripe Mark and the Three–Stripe Mark is not famous and distinctive, claiming there is nothing inherently distinctive about a stripe and thus, as a matter of law, adidas' dilution claim fails because the FTDA was not intended to broaden the scope of a mark. (Mot. at 14–17; Reply at 10–11).

Proof of acquired distinctiveness, however, is a difficult empirical inquiry which a factfinder must undertake. *See Avery*

*Dennison Corp.,* 189 F.3d at 876; *Taco Cabana Int'l. Inc. v. Two Pesos. Inc.,* 932 F.2d 1113, 1119–20 (5th Cir.1991). The relevant factors include: whether actual purchasers . . . associate the [mark] with [adidas]; the degree and manner of [adidas'] advertising; the length and manner of [adidas'] use of the [mark]; and whether [adidas'] use of the [mark] has been exclusive. *Clamp Mfg. Co. v. Enco Mfg. Co.,* 870 F.2d 512, 517 (9th Cir.1989).

Adidas' Counterclaim properly pleads each of the required elements for a dilution claim. (See Countercl. ¶¶ 16, 49, 54 (fame); 22, 50 (commercial use); 36 (ACI sales began after adidas' mark became famous); 50–51, 55–56 (two-stripe design dilutes adidas' Mark)). In addition, yet unnecessary at this stage, adidas has submitted sufficient evidence to support the requisite elements that the two-stripe design is identical or nearly identical to its Mark and that its Mark is famous and distinctive. Accepting all factual allegations regarding similarity, fame and distinctiveness pleaded in the complaint as true, adidas has properly plead its claim for dilution under both federal and state law and therefore, ACI's motion to dismiss this claim is **DENIED.**

### V. Breach of Contract Claim

The February 18, 2003 Settlement Agreement provides that ACI "acknowledge[s] the validity of [a]didas's rights in the Three–Stripe Mark," and agrees to "refrain from displaying, selling, or offering for sale: (1) any footwear bearing the

---

**2.** These are: (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties; and (H) whether the mark was registered . . . on the principal register. 15 U.S.C. § 1125(c)(1).

Three–Stripe Mark or any confusingly similar imitation thereof." (Countercl. Ex. 7 at 1–2). ACI argues the two-stripe design alleged as being sold by ACI is not confusingly similar to the Three–Stripe Mark, therefore ACI did not breach the Agreement. For the reasons stated above, adidas has sufficiently plead claims for infringement and unfair competition, therefore ACI's motion to dismiss this contract claim is also **DENIED**.

## VI.  *Conclusion*

For the foregoing reasons, ACI's motion to dismiss adidas' Counterclaim is **DENIED**.

IT IS SO ORDERED.