**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ART ATTACKS INK, LLC, a
California limited liability
company,
          *Plaintiff-Appellant,*

v.

MGA ENTERTAINMENT INC., a
California corporation; ISAAC
LARIAN, an individual,
          *Defendants-Appellees.*

No. 07-56110

D.C. No.
CV-04-01035-RMB

OPINION

Appeal from the United States District Court
for the Southern District of California
Rudi M. Brewster, District Judge, Presiding

Argued and Submitted
December 9, 2008—Pasadena, California

Filed September 16, 2009

Before: Harry Pregerson, Dorothy W. Nelson and
David R. Thompson, Circuit Judges.

Opinion by Judge Pregerson

13439

## COUNSEL

Michael W. Quade, Quade & Associates, San Diego, California, for the plaintiff-appellant.

Craig Holden, MGA Entertainment, Inc., Van Nuys, California, for the defendant-appellee.

## OPINION

PREGERSON, Circuit Judge:

## I.    Introduction

Art Attacks Ink, LLC ("Art Attacks") brought suit against MGA Entertainment Inc. ("MGA"), alleging copyright, trademark, and trade dress infringement. A jury found for MGA on the trademark claim, but could not reach a verdict on the remaining claims. MGA then moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). The district court granted the motion and Art Attacks timely appealed. We have jurisdiction under 28 U.S.C. § 1291. As a preliminary matter, we must determine whether MGA timely filed its Rule 50(b) motion. We conclude that it did not. However, because Rule 50(b) is not a jurisdictional rule, the time-

liness argument is forfeitable. Art Attacks waived its timeliness objection by failing to raise it before the district court.

On the merits of the appeal, we conclude that Art Attacks failed to demonstrate that MGA had access to copyrighted works and that Art Attacks designs acquired secondary meaning. We therefore affirm the district court's grant of judgment as a matter of law as to Art Attacks's copyright and trade dress infringement claims.

## II.    Background

Art Attacks is a small airbrush art business that has sold custom-made T-shirts and other items since 1993. Art Attacks designs include animals, celebrities, cars, and a "Spoiled Brats" collection. The Spoiled Brats collection features cartoonish, predominantly female characters with oversized eyes, disproportionately large heads and feet, makeup, and bare midriffs.

Art Attacks sold its wares primarily from a booth at several county fairs. Because Art Attacks is a small family business, it did business at only one location at a time. Art Attacks traveled to fairs in Orange County, San Diego County, Ventura County, Riverside County, San Bernardino County, and, after 1998, Los Angeles County. Art Attacks also did business at the Camp Pendleton Exchange, a convention in the Navajo Nation, and several malls, amusement centers, and Wal-Mart stores in Arizona. Art Attacks also sold its wares at Wal-Mart stores in California, including the Santee, Chula Vista, and Poway Stores.

At county fairs and other locations, Art Attacks airbrushed designs onto a shirt or other garment, along with the customer's name and a small caption, while the customer waited. Spoiled Brats designs could be tailored to resemble individual customers. Art Attacks sold about 2,000 Spoiled Brats T-

shirts per year. Art Attacks copyrighted the Spoiled Brats characters in 1996.

Art Attacks also maintained an internet website as of 1996, during the early years of widespread internet use. The website displayed images of various Art Attacks airbrush designs, including animals, celebrities, cars, animals, and the Spoiled Brats. The website took two minutes to load. Users could click through the main Art Attacks website to a linked Spoiled Brats-specific page to obtain a mail-in order form. The website also lacked Spoiled Brats "meta tags," invisible pieces of data that are embedded in websites and act as flags to internet search engines. Because the Art Attacks website lacked such flags, an internet search for "Spoiled Brats" might not lead to the Art Attacks site.

Art Attacks never advertised in broadcast or print media. It did, however, display images of the Spoiled Brats on the Art Attacks booth. Millions of fair attendees have walked past the booth over the years. The Del Amo Fair, for example, has over one million yearly attendees, seventy-five percent of whom pass by the Art Attacks booth near the main entrance.

In 2001, MGA began selling "Bratz" dolls, which, like Art Attacks's designs, feature large eyes, heavy makeup, over-sized eyes, heads, and feet, and bare midriffs. Art Attacks filed suit against MGA in 2004, alleging causes of action including trademark, trade dress, and copyright infringement. A jury found for MGA on the trademark claim, but could not reach a verdict on the remaining claims. The district judge dismissed the jury on Friday, May 11, and entered an order declaring a mistrial on Monday, May 14. At a status conference on Monday, May 14, MGA declared its intention to file a Rule 50(b) motion for judgment as a matter of law. A law clerk indicated to MGA that such a motion would have to be filed by May 29, ten court days after the May 14 status conference.[1] Ten days later, on May 29, MGA filed a motion for

---

[1]Saturdays, Sundays, and legal holidays do not count toward filing deadlines when the filing period is less than eleven days. Fed. R. Civ. P. 6(a)(2).

judgment as a matter of law under Federal Rule of Procedure 50(b). The district court granted the motion. This appeal followed.

## III.    Discussion

### A.    Jurisdiction to Consider the Rule 50(b) Motion

Art Attacks contends that MGA failed to file its motion for judgment as a matter of law within ten days of the jury's discharge, as required by Federal Rule of Civil Procedure 50(b), and that the district court therefore lacked jurisdiction to consider the motion. "Jurisdiction is a question of law that we review de novo." *United States v. Neil*, 312 F.3d 419, 421 (9th Cir. 2002).

### 1.    Whether MGA's Motion Was Timely

**[1]** Federal Rule of Civil Procedure 50(b) states that "if the [renewed] motion [for judgment as a matter of law] addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged[,] the movant may file a renewed motion for judgment as a matter of law . . . ." The period begins to run on the day after the district court dismisses the jury. Fed. R. Civ. P. 6(a). Though the district court did not enter the order granting a mistrial until Monday, May 14, the district judge dismissed the jury on Friday, May 11. The ten-day filing period therefore began to run on Monday, May 14 and closed on Friday, May 25. MGA's renewed motion for judgment as a matter of law was untimely.

### 2.    Whether Rule 50(b)'s Timeliness Requirement is Jurisdictional

**[2]** Federal Rule of Civil Procedure 6(b) forbids courts to extend the ten-day filing period set out in Rule 50(b). Accordingly, courts have sometimes characterized Rule 50(b)'s ten-day filing requirement as mandatory and jurisdictional, and

therefore incapable of being waived or forfeited. *See, e.g.*, *Goodman v. Bowdoin Coll.*, 380 F.3d 33, 46 (1st Cir. 2004); *Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 157 (2d Cir. 2001); *U.S. Leather, Inc. v. H&W P'ship*, 60 F.3d 222, 225 (5th Cir. 1995).

Since then, however, the Supreme Court has "clarified that procedural rules formerly referred to as 'mandatory and jurisdictional' may be, instead, simply 'inflexible claim-processing rule[s],' mandatory if invoked by a party but forfeitable if not invoked." *United States v. Sadler*, 480 F.3d 932, 934 (9th Cir. 2007) (citing *Eberhart v. United States*, 546 U.S. 12 (2005) and *Kontrick v. Ryan*, 540 U.S. 443 (2004)) (internal quotations omitted)). "The distinction between jurisdictional rules and inflexible but not jurisdictional timeliness rules . . . turns largely on whether the timeliness requirement is or is not grounded in a statute." *Sadler*, 480 F.3d at 936. "[T]ime constraints arising only from Court-prescribed, albeit congressionally authorized, procedural rules [such as the Federal Rules] are not jurisdictional. *Id.* at 938.

**[3]** Though this circuit has not yet specifically addressed whether the time restrictions in Rule 6(b) and Rule 50(b) are jurisdictional, other circuits have concluded that these restrictions are non-jurisdictional. *See, e.g.*, *Dill v. Gen. Am. Life Ins. Co.*, 525 F.3d 612, 618 (8th Cir. 2008); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 232 (2d Cir. 2000). We agree. *See also Eberhart*, 546 U.S. at 19 (likening Federal Rule of Criminal Procedure 45(b), a non-jurisdictional rule, to Federal Rule of Civil Procedure 6(b). Because Rule 50(b)'s ten-day filing deadline is a non-jurisdictional claim-processing rule, it can be waived or forfeited.

*3.   Whether Art Attacks Waived Its Rule 50(b) Argument*

**[4]** Art Attacks never objected to the timeliness of MGA's Rule 50(b) motion for summary judgment before the district

court. Accordingly, Art Attacks has forfeited its untimeliness objection. We therefore proceed to the merits of the appeal.

### B.    Copyright Infringement

We review de novo renewed motions for judgment as a matter of law. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). A grant of such a motion is proper if the evidence, construed in favor of the nonmoving party, permits only one reasonable conclusion. *Id.*

**[5]** "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff 's work . . . ." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (quoting *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996)). To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work. *Id.* at 482. Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff 's work and the defendant's access, or (2) showing that the plaintiff 's work has been widely disseminated. *Id.*

### 1.    Chain of Events

Art Attacks does not explicitly raise a chain of events argument, but implicitly does so by referring to evidence that an MGA decision-maker may have attended a county fair at which Art Attacks displayed the Spoiled Brats designs. MGA employee Aileen Storer ("Storer") designed the text of the Bratz mark displayed on doll packaging. Storer testified that she attended the Los Angeles County Fair sometime between 1995 and 2005. Art Attacks did not attend the Los Angeles County Fair until 1998. MGA began marketing Bratz dolls in 2001. The only relevant time period, therefore, is 1998-2001, within which Art Attacks displayed the Spoiled Brats designs

at the Los Angeles County but before MGA began marketing the Bratz dolls.

**[6]** There is no direct evidence that Storer ever saw an Art Attacks booth. Furthermore, Art Attacks has failed to show that Storer visited the Los Angeles County Fair during the relevant period. Though there may be some slight chance that Storer did visit the fair sometime during the relevant period, that chance does not create more than a "bare possibility" of a chain of events linking Art Attacks designs to MGA. Thus, Art Attacks has not shown a chain of events sufficient to demonstrate that MGA had access to copyrighted material.

## 2. *Wide Dissemination*

**[7]** Art Attacks can also prove access by demonstrating wide dissemination of its protected work. *Three Boys Music*, 212 F.3d at 482. Art Attacks argues that it widely disseminated the Spoiled Brats designs in three ways: (1) on the Art Attacks booth itself, (2) on Spoiled Brats T-shirts, which serve as "walking billboards," and (3) via the internet.

In *Rice v. Fox Broadcasting Co*., we held that a video that sold 19,000 copies over a thirteen-year period could not be considered widely disseminated. 330 F.3d 1170, 1178 (9th Cir. 2003). In *Jason v. Fonda*, book sales of no more than 2,000 copies nationwide and no more than 700 copies in Southern California did not create more than a bare possibility of access. 526 F.Supp. 774, 776 (C.D. Cal. 1981) (*adopted and aff'd by Jason v. Fonda*, 698 F.2d 966 (9th Cir. 1982)). Art Attacks attempts to distinguish *Rice* and *Jason* by arguing that books and videos require far more attention to view than T-shirts, which require only an instant. Art Attacks also argues that we should look beyond Spoiled Brats sales figures and instead consider the number of people potentially exposed to Spoiled Brats merchandise. We do not find that either of these arguments demonstrate wide dissemination of the Spoiled Brats designs.

**[8]** Art Attacks displayed Spoiled Brats images on its fair booths and store kiosks. The Spoiled Brats designs were not the only displays, but did appear in a binder on the booth's counter, as well as on the walls of the 20′x10′ booth. Although Art Attacks did not present any evidence of how many people saw or noticed the booth, Art Attacks showed that millions of people attend the relevant county fairs. Even so, there is no evidence that significant numbers of passersby would notice the Art Attacks booth among the many other similar booths at the fair or be able to view the Spoiled Brats displays.

**[9]** Nor are we convinced by Art Attacks's "walking billboard" argument. Art Attacks sold only 2,000 Spoiled Brats T-shirts per year. The only evidence Art Attacks presented that supports the "walking billboard" argument was testimony from Jo Ann Mauck, the owner of Art Attacks and designer of the Spoiled Brats, that she *once* saw a person wearing a Spoiled Brats shirt in public. Even allowing for differences in attentional requirements needed to view T-shirts and the books and videos at issue in *Rice* and *Jason*, Art Attacks cannot demonstrate that its Spoiled Brats designs were widely disseminated to the extent necessary to create more than a "bare possibility" that MGA had access to the designs.

**[10]** Art Attacks also contends that its website widely disseminated the Spoiled Brats designs. Although we recognize the power of the internet to reach a wide and diverse audience, the evidence here is not sufficient to demonstrate wide dissemination. Art Attacks launched its website in 1996, during the early years of common internet use. The image-heavy website took two full minutes to fully load. Even then, the Spoiled Brats design was only one of several images on the page. Viewers would not see the Spoiled Brats design without scrolling down on the page. Furthermore, the webpage did not include "meta tags" that would identify the Art Attacks site to internet search engines. As a result, a potential viewer who typed "Spoiled Brats" into a search field would likely not

encounter the Art Attacks page. A website with such limitations could not have widely disseminated the copyrighted Spoiled Brats material.

**[11]** A reasonable jury could not have concluded that there was more than a "bare possibility" that MGA had access to Art Attacks's Spoiled Brats designs. Accordingly, we affirm the district court's grant of summary judgment to MGA on the copyright infringement claim.

### C.    Trade Dress

**[12]** Art Attacks also accused MGA of trade dress infringement. Trade dress protection applies to "a combination of any elements in which a product is presented to a buyer," including the shape and design of a product. J.Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1, at 8-3 (4th ed. 2008). To prove trade dress infringement, a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products. *Disc Golf Ass'n v. Champion Discs*, 158 F.3d 1002, 1005 (9th Cir. 1998). Our analysis here centers on the second factor: whether Art Attacks's trade dress has acquired secondary meaning.

To succeed on a trade dress infringement based on product design, the plaintiff must show that her design has attained secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 214 (2000). "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999). To show secondary meaning, a plaintiff must demonstrate "a mental recognition

in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." *Japan Telecom v. Japan Telecom Am.*, 287 F.3d 866, 873 (9th Cir. 2002) (internal quotation omitted).

Art Attacks argues that a reasonable jury could have found secondary meaning based on (1) purchaser perception, (2) advertising, (3) extent and exclusivity of use, and (4) actual confusion.

### 1.   *Purchaser Perception*

**[13]** In its attempt to show purchaser perception of an association between the Spoiled Brats' characteristics and a single source, Art Attacks largely reiterates its widespread dissemination arguments. Art Attacks again focuses on the number of attendees at county fairs, and additionally cites expert testimony identifying the Spoiled Brats defining features. Art Attacks correctly points out that direct survey evidence of purchaser perception is not required. *See Clamp Mfg. Co. Inc. v. Enco Mfg. Co. Inc.*, 870 F.2d 512, 517 (9th Cir. 1989). Nevertheless, Art Attacks fails to demonstrate that purchasers of a product that displayed large eyes, oversized feet, and other characteristics typical of the Spoiled Brats would link that product with a single source. The only source of such evidence is the testimony of Tammie Gallagher, who said that she would associate the Spoiled Brats image with Art Attacks no matter where she saw it. Testimony from a single source is insufficient to demonstrate secondary meaning. *See Japan Telecom*, 287 F.3d at 866-67 (two letters and six declarations insufficient to demonstrate secondary meaning). A reasonable jury could not have found sufficient purchaser association between Spoiled Brats trade dress and Art Attacks to establish secondary meaning.

### 2.   *Advertising*

**[14]** To demonstrate secondary meaning based on advertising, the advertising must be of a "nature and extent to create

an association" with the advertiser's goods. *Dep't of Parks and Recreation v. Bazaar Del Mundo*, 448 F.3d 1118, 1128 (9th Cir. 2006). The "true test of secondary meaning" is the effectiveness of the advertising effort. *International Jensen v. Metrosound U.S.A.*, 4 F.3d 819, 824 (9th Cir. 1993).

**[15]** Here, Art Attacks again reiterates its claims regarding its website and county fair booths, discussed at length above. Art Attacks states, in short, that many people passed by the Art Attacks booths at various county fairs, and that the Art Attacks website made Spoiled Brats images widely available to consumers. As discussed above, Art Attacks has provided no evidence that these efforts were effective. A reasonable jury could not have concluded otherwise.

## 3.   *Extent and Exclusivity of Use*

Art Attacks attempts to show that its trade dress has acquired secondary meaning based on the fact that Art Attacks held a copyright to Spoiled Brats designs for over five years. *See Filipino Yellow Pages*, 198 F.3d at 1151 ("Secondary meaning can be established in many ways, including . . . exclusivity, manner, and length of use of a mark").

**[16]** Other circuits have explicitly held that extensive use alone cannot establish secondary meaning. *See, e.g. Vision Center v. Opticks*, 596 F.2d 111, 119 (5th Cir. 1979) ("[C]ourts have summarily rejected claims of secondary meaning predicated solely upon the continued use of the mark for many years") (internal quotation omitted). Our own cases have suggested that secondary meaning requires more than extensive use alone. *See, e.g.*, *Clamp Mfg.*, 870 F.2d at 517 ("[e]vidence of use *and* advertising over a substantial period of time is enough to establish secondary meaning") (emphasis added); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) (holding that a mark acquired sec-

ondary meaning due to continued use of forty-six years and "extensive and expensive advertising and promotion").

**[17]** Art Attacks also cites 15 U.S.C. § 1052(f) for support. That statute, which applies to trademark registration, clearly states, however, that "proof of substantially *exclusive and* continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made" can serve as prima facie evidence of distinctiveness. *Id.* (emphasis added). Art Attacks showed no evidence of exclusivity. Here, therefore, a reasonable jury could not have found secondary meaning based solely on five years of use.

### 4.   *Actual Confusion*

**[18]** Lastly, Art Attacks attempts to show secondary meaning by demonstrating actual consumer confusion between MGA's Bratz dolls and Art Attacks's Spoiled Brats designs. To support this claim, Art Attacks refers to testimony from three witnesses: Tim Lowery, Emerson Kovacs, Pamela Karns. All three of these witnesses were Art Attacks employees or personal friends of Art Attacks founder Jo Ann Mauck, or both. In *Japan Telecom*, we rejected evidence of actual confusion from witnesses who had personal relationships with the plaintiff company's president. *Japan Telecom*, 287 F.3d at 874. Similarly, we held in *Self-Realization Fellowship Church v. Ananda Church of Self-Realization* that declarations from employees have little probative value. 59 F.3d 902, 910 (9th Cir. 1995). A reasonable jury therefore could not have found actual confusion sufficient to establish secondary meaning.

## IV.   **Conclusion**

Because we conclude that a reasonable jury could not find that Art Attacks's trade dress has acquired secondary meaning, we do not address the functionality or substantial likelihood of confusion prongs of the trade dress analysis. *See Disc*

*Golf Ass'n*, 158 F.3d at 1005. Though MGA's renewed motion for summary judgment was untimely, Federal Rule of Civil Procedure 50(b)'s ten-day filing limit is an inflexible claim-processing rule, not a jurisdictional rule. Art Attacks waived its forfeitable timeliness argument by failing to raise it to the district court. A reasonable jury could not have found that MGA had access to Art Attacks's copyrighted work, nor that Art Attacks's trade dress had acquired secondary meaning. Accordingly, we AFFIRM the district court's grant of summary judgment on the copyright infringement and trade dress claims.[2]

---

[2]We also affirm the district court's grant of judgment as a matter of law with respect to Isaac Larian.