NOT FOR PUBLICATION


UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MANSOUR AREKAT, individually and in his capacity as chief operating officer and owner of Arekat Pacific Security Inc. a Hawaii corporation dba A.P.I. Security, Inc., <br><br> Plaintiff - Appellant, <br><br> v. <br><br> LEE D. DONOHUE; CITY AND COUNTY OF HONOLULU; LETHA DE CAIRES; MIKE MIRANDA; RAYMOND ANCHETA; JOHN DOES 1-25, <br><br> Defendants - Appellees. | No. 06-16074 <br><br> D.C. No. CV-03-00710-BMK <br><br> MEMORANDUM * |

Appeal from the United States District Court
for the District of Hawaii
Barry M. Kurren, Magistrate Judge, Presiding

Argued and Submitted March 13, 2008
San Francisco, California

Before: REINHARDT, FISHER, and CALLAHAN, Circuit Judges.**

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\* Due to the death of Judge Brunetti, Judge Callahan was drawn to replace him on the panel.

Plaintiff-Appellant Mansour Arekat appeals the district court's denial of his renewed motion for judgment as a matter of law in the underlying § 1983 action. *See* Fed R. Civ. P. 50(b). We review de novo the district court's order denying his motion. *See Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). A movant is entitled to judgment as a matter of law if the evidence presented at trial, when viewed in the light most favorable to the nonmoving party, would not permit a reasonable juror to find in the nonmoving party's favor. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1205-06 (9th Cir. 2008). We do not "weigh the evidence" favoring the movant against that adduced by the nonmoving party but rather "simply ask whether the [defendants] ha[ve] presented sufficient evidence to support the jury's conclusion." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008).

Defendants took Arekat into custody without a warrant and without any other judicial process, and transported him to a medical facility for a psychiatric examination pursuant to a mental health statute that provides for the "[e]*mergency* examination and hospitalization" of certain mentally ill individuals. Haw. Rev. Stat. § 334-59 (emphasis added). The statute allows police to transport to a psychiatric facility for evaluation an individual who "is *imminently* dangerous to

2

self or others, or is gravely disabled, or is obviously ill." *Id.* § 334-59(a)(1) (emphasis added). The statute, under which Arekat was seized, applies only in emergencies: Hawaii has a separate set of statutes that govern involuntary examination and hospitalization in nonemergency situations. Those statutes require a judicial determination before the authorities may seize and transport a person to a hospital for an involuntary mental examination. *See id.* § 334-60.5(g); *see also id.* § 334-60.2-.5 (providing additional standards and procedural protections).

The Fourth Amendment protects persons from unreasonable seizure by the government. Seizure of a person alleged to be mentally ill and dangerous, like seizure of a person alleged to have committed a crime, must be supported by probable cause. *See Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991). As applied to the Hawaii emergency mental health statute, "[p]robable cause exists when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that" an individual "is imminently dangerous to self or others, or is gravely disabled, or is obviously ill." *See United States v. Noster*, 590 F.3d 624, 633 (9th Cir. 2009) (internal quotations, citation omitted); Haw. Rev. Stat. § 334-59(a)(1). Here, the jury found that such probable cause existed when the police seized Arekat. The evidence presented at trial,

however, was insufficient as a matter of law to permit any reasonable juror to reach that determination.[1]  Accordingly, Arekat's 50(b) motion should have been granted.

Defendants do not argue that Arekat was "gravely disabled" or "obviously ill," and there was no evidence in the record to support a finding that either condition obtained.  *See* Haw. Rev. Stat. § 334-1 (defining the terms).  Nor was there any evidence whatsoever to support a finding that Arekat was a danger to himself.

> "Dangerous to self" means the person recently has threatened or attempted suicide or serious bodily harm; or the person recently has behaved in such a manner as to indicate that the person is unable, without supervision and the assistance of others, to satisfy the need for nourishment, essential medical care, shelter or self-protection, so that it is probable that death, substantial bodily injury, or serious physical debilitation or disease will result unless adequate treatment is afforded.

*Id.*; *see also In re Doe*, 78 P.3d 341, 366-67 (Haw. Ct. App. 2003) (finding insufficient evidence based on racist remarks and refusal to take psychiatric

---

[1] The dissent locates evidence that the plaintiff posed a credible threat in that section of the FBI report which stated that "Arekat alluded that he might kill [] if this harassment continued and he slept with his 'finger on the trigger.'"  This section of the FBI report was not introduced into evidence, however, and thus was not before the jury.

medication).  That leaves only "imminent[] dangerous[ness] to others" as a possible basis for a finding of probable cause.

"Dangerous to others" as defined in the statute requires evidence of a "*recent* act, attempt or threat" showing that the person is not just mentally ill, but actually "likely to do substantial physical or emotional injury to another."  Haw. Rev. Stat. § 334-1 (emphasis added); *In re Doe*, 78 P.3d at 366 (holding that mental illness alone is insufficient to demonstrate imminent and substantial dangerousness).  The evidence the jury had before it was insufficient to support a determination that defendants had probable cause to believe that Arekat was a danger to others, let alone that he was *imminently* dangerous or even that he suffered from a serious mental illness.  Nor was there any evidence that there was an emergency that would warrant invocation of the emergency statute rather than the parallel non-emergency statute.

We next review the evidence submitted to the jury.  Defendants' only observation of plaintiff before taking him into custody revealed no signs of threatening behavior; rather, the arresting officers described him as being "calm and cooperative."  Accordingly, probable cause would have had to come from other sources.  Much of the evidence relied upon by defendants is simply irrelevant.  Arekat's demeanor and statements made *after* he was seized by

defendants cannot provide the probable cause that defendants were required to have *before* they seized him. His post-arrest statements, moreover, concerned only his belief that his business competitors were conspiring to harm him, and his concern that his unwarranted seizure was a product of that conspiracy. These statements contained no threats or other indications of possible violence against anyone. That Arekat, who owned a security company, had access to legally registered firearms was also not indicative of dangerousness to others because defendants provided no evidence of recent use or threatened use of the weapons against anyone. The evidence that the jury heard regarding Arekat's self-initiated interview with the FBI, the only portion of the interview materials that can support the challenged jury findings, concerned his belief that he was under surveillance by his business competitors and that those competitors were involved in organized crime. It included no report of an "act, attempt or threat" on Arekat's part that would give rise to a reasonable belief that he was "likely to do substantial physical or emotional injury to" anyone, let alone that there was an *imminent* threat of such action on his part. Arekat's FBI interview, moreover, took place more than a month before his arrest, and thus his conduct in that interview could not, as a matter of law, constitute the *recent* conduct demonstrating imminent dangerousness that is required by the Hawaii emergency statute under which he

6

was detained.  *Cf.* Haw. Rev. Stat. § 334-60.3 (limiting inclusion of materials in a petition for involuntary hospitalization to reflect evaluations within two or five days, depending on the context of the examination).

The remaining evidence on which defendants rely is the information that they received from David Engle, a disgruntled and recently discharged former employee of Arekat.  This information, however, also could not, as a matter of law, constitute probable cause.  For purposes of establishing probable cause, an arresting officer is permitted to depend on information supplied by a "reliable" source.  *See United States v. Martinez-Garcia*, 397 F.3d 1205, 1216-17 (9th Cir. 2005).  Engle, however, was not a reliable source.  He had no history of providing reliable information to the police, and all that defendants knew of him was that he had several recent criminal convictions, that he was a long time drug addict, and that he was engaged in a wage dispute with Arekat.  *Cf. id.* (finding an informant credible based on a "history of providing credible information to law enforcement" and having "never failed a polygraph test"); *see also United States v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir. 1986) ("A[n] . . . informant's veracity may be established by the absence of an apparent motive to falsify and independent police corroboration of the details provided by the informant.").

7

Even if Engle's information were deemed reliable, it could not constitute evidence of probable cause for invoking the *emergency* mental health examination and hospitalization statute. First, Engle's allegations concerning Arekat's behavior at his apartment related to events that took place more than a month before Arekat's arrest, not "recent" events. Engle's other allegation – that Arekat assaulted him when he went to Arekat's place of business and tried to collect a paycheck after having been fired – concerned a minor physical confrontation that at most warranted an investigation as a minor criminal offense. The "assault" might have been sufficient to allow police to interview Arekat, and, perhaps, to seek a warrant for his arrest.[2] It could not, however, provide evidence that would support a finding of probable cause that Arekat's mental condition was such that there was an *imminent* danger that he would cause serious physical or emotional injury to Engle or anyone else. In short, when the police seized and transported Arekat to the hospital three days after his alleged confrontation with Engle, there

---

[2] The police officer who interviewed Engle testified that he told her of this incident "[t]hat there had been some workplace violence that had occurred when he went to try to retrieve his paycheck; and that at the time Mansour Arekat had come behind the counter from where he was standing, shoved him against the wall, put his hand back as if he was going to hit him, yelled many different things at him and made him fearful of his own safety." This was later confirmed by Engle's testimony at the trial. Engle said that Arekat had "c[o]me from behind the counter, pushed me up against the wall, and called me a few choice names," in front of a number of witnesses.

was simply no basis for the arresting police officers to believe that he presented an imminent danger to anyone. Nor was there any basis whatsoever for a reasonable belief on the part of the officers that Arekat's conduct warranted invocation of the *emergency* mental health statute.

To reiterate, the statute under which Arekat was seized permits an individual's warrantless seizure and transportation to a psychiatric facility for evaluation without any judicial procedures or other due process only in *emergency* circumstances. Moreover, there must be sufficient reliable information for an officer to form a reasonable belief that the individual poses an *imminent* threat of causing serious physical or mental injury to himself or others. The emergency provision of the law may not be invoked in an ordinary criminal investigation, such as might have been warranted as a result of Engle's complaint. A report by a disgruntled former employee is precisely the type of allegation that requirees the full procedural protections of Hawaii's nonemergency involuntary examination and hospitalization statute. Uncorroborated reports by people with personal grudges are not sufficient to invoke the *emergency* provisions of Hawaii's mental health law, especially when they are implemented several days after the fact.

As a matter of law, the only finding or conclusion that was permissible on the record before the jury is that defendants did not have probable cause to seize

9

Arekat under the *emergency* mental health statute. The district court's denial of

Arekat's renewed motion for judgment as a matter of law is **REVERSED**, and the

case is **REMANDED** to the district court for further proceedings consistent with

this disposition.

**REVERSED and REMANDED**.

**Arekat v. Donohue**, No. 06-16074

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent. The majority, after properly noting that we do not re-weigh the evidence when reviewing the denial of a motion for new trial, proceeds to do exactly that.

The majority's description of the evidence is a combination of misdirection and re-weighing of the evidence. It starts by commenting on Arekat's "calm and cooperative" attitude when arrested and his unexceptional subsequent behavior. Of course, the defendants in detaining Arekat did not rely on his behavior when or after he was detained.

The majority then attempts to explain away Arekat's suspicious behavior by noting that he owned a security company and characterizing his interviews with the FBI as not containing any "act, attempt or threat." However, reasonable minds could consider Arekat's ownership of a security company with access to firearms a reason to be concerned with Arekat's aberrant behavior. Moreover, the FBI's report did describe a threat: it stated that "Arekat alluded that he might kill [] if this harassment continued and he slept with his 'finger on the trigger.'" Indeed, it appears that Arekat's own statements to the FBI were one of the reasons the FBI reported Arekat to the Health Suicide and Crisis Hotline.

The majority proceeds to sanitize the evidence by determining that Engle "was not a reliable source." The majority feels competent to make this credibility determination based on the facts that Engle "had several recent criminal convictions," "was a long time drug addict," and "was engaged in a wage dispute with Arekat." It conveniently ignores that both the FBI and the Honolulu Police Department conducted lengthy interviews with Engle. They determined that Engle was credible and that his concerns complemented the agencies' concerns that were based on Arekat's comments and actions. Also, Engle testified at the trial so the jury was able to make its own determination as to his reliability and credibility. The fact that the majority does not find the evidence as compelling as the jury did does not justify the majority's re-weighing of the evidence.

Finally, perhaps uncomfortable with its revision of the evidence, the majority seeks to bootstrap its conclusion by asserting that Engle's information was not – as a matter of law – sufficient to invoke "the emergency mental health examination and hospitalization statute" because some of the events related by Engle "took place more than a month before Arekat's arrest." It then, consistent with its comfort with re-weighing the evidence, discounts Engle's other allegations as concerning "a minor physical confrontation that at most warranted an investigation as a minor criminal offense." This characterization is necessary

2

because otherwise the agencies moved promptly as Arekat was detained – as the majority admits – three days after Engle's confrontation with Arekat. Surely, this is not an unreasonable amount of time for police officers to consider and investigate information provided by a person whom the majority claims is "not a reliable source" before detaining Arekat.

The real harm worked by the majority's decision is not just its impact on the officers involved, but in leaving police officers no safe course. If the officers had done nothing and Arekat had proceeded to shoot someone, defendants undoubtedly would have been sued for failing to detain Arekat. One of the officers explained in her deposition that this case reminded her of a prior case in which the police had not removed a firearm from a person who exhibited signs of paranoia, and that person had used it to kill a person, resulting in a huge civil liability for the police department and the city. In this case, the defendants made a courageous decision to detain Arekat. After considering all the evidence presented during a full trial, a jury found that the officers had probable cause to believe that Arekat was dangerous to himself or others. The jury's verdict was reasonable and should not be set aside because two appellate judges, on the cold record, would have weighed the evidence differently. Accordingly I dissent.

3