**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RODNEY WOODLAND, | No. 23-55418 |
| *Plaintiff-Appellant*, | D.C. No. 2:22-cv-03930-AB-MRW |
| v. | |
| MONTERO LAMAR HILL, AKA Lil Nas X; DOES, 1-10, Inclusive, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted January 13, 2025
Pasadena, California

Filed May 16, 2025

Before: Ronald M. Gould, Mark J. Bennett, and Kenneth
K. Lee, Circuit Judges.

Opinion by Judge Lee

# SUMMARY[*]

## Copyright

The panel affirmed the district court's dismissal of an action for copyright infringement brought by Rodney Woodland against Montero Lamar Hill.

Woodland alleged that Hill, also known as Lil Nas X, posted photos of himself on his Instagram page that were too similar to photos on Woodland's page.

The panel held that, in the online context, Woodland did not plausibly allege that Hill had "access" to Woodland's photos and thus did not sufficiently allege the copying of copyrighted material.

Woodland also failed to plausibly allege that Hill unlawfully appropriated his photos. The panel held that the Copyright Act protects only the "selection" and "arrangement" of individual elements in a photo, and here, the "selection" and "arrangement" in the photos were not substantially similar.

## COUNSEL

Andrew Grimm (argued), Digital Justice Foundation, Omaha, Nebraska; Gregory W. Keenan, Digital Justice Foundation, Floral Park, New York; Michael R. Shapiro,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Law Offices of Michael Shapiro, Los Angeles, California; for Plaintiff-Appellant.

Peter J. Anderson (argued), Davis Wright Tremaine LLP, San Francisco, California; Adrian F. Vallens, Davis Wright Tremaine LLP, Los Angeles, California; for Defendant-Appellee.

## OPINION

LEE, Circuit Judge:

Rodney Woodland, a freelance artist and model, posts semi-naked photographs of himself in different poses on Instagram. Montero Lamar Hill, better known as the recording artist Lil Nas X, also has an Instagram account—and he, too, shares semi-naked photos of himself in varying poses (as one apparently does on Instagram these days). Woodland sued Hill for copyright infringement, alleging that several photos on Hill's Instagram page are too similar to those from his own profile.

We affirm the district court's order dismissing his copyright infringement claim. For a copyright claim, a plaintiff must show, among other things, (1) the copying of copyrighted material and (2) the unlawful appropriation of it. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled in part on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1066–69 (9th Cir. 2020) (en banc). Woodland has not plausibly alleged either. First, Woodland has not plausibly pleaded that Hill had "access" to Woodland's photos to allege copying. *See id.* The mere fact that Woodland posted his photos on his Instagram

page—without more—falls short of plausibly alleging that Hill had "access" to and saw Woodland's photographs. Second, Woodland has not shown that Hill unlawfully appropriated his photos. While some elements from the photos appear superficially similar, the Copyright Act protects only the "selection" and "arrangement" of individual elements in a photo. *See id.* at 1119. And here, the "selection" and "arrangement" in the photos are not substantially similar.

## BACKGROUND

Rodney Woodland describes himself as a visual artist, photographer, figure model, and online content creator. He posts many original photographs of himself semi-naked—or more precisely, naked with his groin area strategically covered or obscured—in various poses and backgrounds on Instagram. The photos at issue were posted on his Instagram account between August 2018 and July 2021. Each of Woodland's twelve posts garnered between eight and seventy-five "likes."

Montero Lamar Hill, otherwise known as Lil Nas X, is a well-known recording artist who actively uses Instagram to promote his music and tour dates. He, too, posts photographs of himself semi-naked in a wide array of poses and backgrounds. Between March and October 2021, Hill posted eight photographs on Instagram that Woodland claims infringed on twelve of his copyrighted photographs. Hill's posts on Instagram receive hundreds of thousands, and sometimes millions, of "likes."

In June 2022, Woodland sued Hill for copyright infringement, declaratory relief, accounting, and unjust enrichment. After Woodland filed his amended complaint,

the district court dismissed all of Woodland's claims but granted him leave to amend.

After Woodland filed his second amended complaint, alleging only a copyright infringement claim, the district court dismissed the claim without leave to amend. The district court found that: (1) Woodland failed to allege any facts to show a reasonable possibility that Hill viewed Woodland's photos on Instagram, and (2) Hill's photos and Woodland's photos were not substantially similar.

On appeal, Woodland argues that the district court erred on both grounds. We have jurisdiction under 28 U.S.C § 1291.

## STANDARD OF REVIEW

We review the district court's order granting a motion to dismiss for failure to state a claim de novo. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1096 (9th Cir. 2023). We must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1208 (9th Cir. 2020) (quoting *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019)). From there, we "decide whether the complaint articulates 'enough facts to state a claim to relief that is plausible on its face.'" *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236, 1239 (9th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## DISCUSSION

To survive a motion to dismiss, Woodland must state a plausible claim for copyright infringement. To prove copyright infringement, a plaintiff must satisfy two prongs: "(1) ownership of a valid copyright, and (2) copying of

constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Because Hill does not dispute that Woodland's photos are his original works, the question here is whether Woodland's operative complaint plausibly alleges the second prong.

Our circuit bifurcates the second prong into "two distinct components: 'copying' and 'unlawful appropriation.'" *Rentmeester*, 883 F.3d at 1117 (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164–65 (9th Cir. 1977)). Plaintiffs must first show that the defendant copied the work at issue. *See Skidmore*, 952 F.3d at 1064. Without copying, there is no copyright violation because, unlike in the patent context, copyright law does not grant authors a monopoly on protected works. *See* 2 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 8.01[A] (2024). So if a different author independently creates the same work without relying on the original work, that "is a complete defense to copyright infringement." *Skidmore*, 952 F.3d at 1064.

After a plaintiff shows that the defendant copied the work, the plaintiff must then prove "unlawful appropriation." *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 941 (9th Cir. 2023). Copyright law "does not forbid *all* copying" because Congress did not want to stifle creativity and creation by categorically cordoning off large swaths of areas as off-limits. *Rentmeester*, 883 F.3d at 1117 (emphasis added). A copyright thus does not protect the "ideas" in a plaintiff's work. Instead, protection extends only to the plaintiff's "particular *expression*" of those ideas. *Krofft*, 562 F.2d at 1163 (emphasis added); *see also* 17 U.S.C. § 102(b) (stating that copyright protection does not "extend to any idea, procedure, process, system, method of operation,

concept, principle, or discovery"). A defendant may copy the unprotected "'ideas' or 'concepts' used in the plaintiff's work," but may not copy the protected expression of those ideas and concepts. *Rentmeester*, 883 F.3d at 1117. To show unlawful appropriation, the plaintiff must prove that the defendant copied enough of the protected expression in the work "to render the two works 'substantially similar.'" *Id.* (quoting *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 914 (9th Cir. 2010)).

As explained below, Woodland fails to establish either copying or unlawful appropriation, and we affirm the district court on both grounds.

## I. Woodland fails to plausibly allege copying because he cannot show Hill had "access" to his photographs.

Because direct evidence that a defendant copied a plaintiff's work "is rarely available" (as in our case), *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987), a plaintiff often proves copying circumstantially by showing: (1) "that the defendant had access to the plaintiff's work and" (2) "that the two works share similarities probative of copying," *Rentmeester*, 883 F.3d at 1117.[1]

---

[1] The "similarities probative of copying" element is different from "substantially similar" under the unlawful appropriation analysis, despite their similarity in wording. The former imposes a much more forgiving standard, as the probative "similarities between the two works need not be extensive." *Rentmeester*, 883 F.3d 1117. Because Woodland's failure to plausibly plead "access" dooms his claim of copying and we later analyze whether the photos are "substantially similar" in addressing unlawful appropriation, we do not discuss the "similarities probative of copying" element.

To show circumstantial evidence of "access," the plaintiff may generally either provide (a) "evidence of a 'chain of events . . . between the plaintiff's work and defendants' access to that work' or" (b) "evidence that 'the plaintiff's work has been widely disseminated.'" *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017) (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *overruled in part on other grounds by Skidmore*, 952 F.3d at 1066–69)).

Woodland concedes that his works are not widely disseminated, given that his Instagram photos received between eight and seventy-five "likes" only. So he must plead "evidence of a 'chain of events'" linking Hill's access to his works. *Unicolors*, 853 F.3d at 985 (quoting *Three Boys Music*, 212 F.3d at 482). The chain of events must raise "a reasonable possibility" for Hill to have viewed his work— "not merely a bare possibility." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009); *see also Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016). A theory of access cannot be "mere speculation or conjecture."[2] *Three Boys Music*, 212 F.3d at 482.

---

[2] Woodland argues that his burden of proof to show access is lower because, in his view, Hill's photos are very similar to Woodland's. This is the reverse application of the now-abrogated "inverse ratio rule." The inverse ratio rule permitted a lower showing of similarity when the plaintiff had strong proof of access. *See, e.g.*, *Three Boys Music*, 212 F.3d at 485. Our en banc court rejected the inverse ratio rule in *Skidmore*, 952 F.3d at 1069, but Woodland claims that the reverse application of that rule survived our decision in *Skidmore*. While at least some of our reasons in *Skidmore* for abrogating the inverse ratio rule extend equally to its reverse application, we need not decide whether *Skidmore* also abolished the reverse of the inverse ratio rule. Even if the reverse application of the rule remains intact, it does not help Woodland because the similarities between his and Hill's works are limited.

### A. Today's social media and digital platforms like Instagram could make it easier to show "access" to copyrighted materials.

Woodland tries to plead "access" by alleging that Hill, as an Instagram user, had a reasonable possibility of viewing Woodland's photos on that social media platform.[3]  As explained later, Woodland ultimately fails to raise a reasonable possibility that Hill viewed his works and thus had "access" to the copyrighted photos.  But Woodland's theory highlights how today's online platforms like Instagram can theoretically make it easier to show "access" in a copyright claim.

Our access doctrine developed "offline" as we addressed copyright claims involving videotapes, books, and other physical items.  *See, e.g.*, *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (finding no access where home video sold only 17,000 copies); *Three Boys Music*, 212 F.3d at 482 (explaining that plaintiffs could successfully prove access by showing their music "was widely disseminated through sales of sheet music, records, and radio performances" (quoting PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT § 8.3.1.1, at 91 (1989))).  In the offline world, it can be difficult to show access if the copyrighted material did not sell well.  For example, we affirmed that a plaintiff who sued Jane Fonda for allegedly lifting copyrighted material from her novel did not show access because the plaintiff's book had sold fewer than 1,000 copies.  *Jason v.*

---

[3] Based on the facts that Hill uses Instagram and Woodland posts photos on it, Woodland says he pleaded "direct access."  But neither of those alleged facts amounts to direct evidence that Hill saw Woodland's work.  At best, they can only be circumstantial evidence that Hill may have stumbled upon Woodland's work.

*Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981), *adopted and aff'd by Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982).

We start by stating the obvious: the Internet makes it easier than ever to reach an artist's copyrightable works. With a couple of clicks of the mouse or a few taps to the screen, artists can upload their works to a website or a platform like Spotify, YouTube, or Instagram, making them available to millions or billions of individuals around the world—including copycats.

We briefly addressed access in this online context in *Art Attacks*. *See* 581 F.3d at 1145. In that case, the plaintiffs alleged that because they posted their artistic designs to their standalone website, the designs were sufficiently widely disseminated. *Id.* We acknowledged that the Internet provides an opportunity "to reach a wide and diverse audience" but held that the plaintiffs failed to show wide dissemination. *Id.* Our decision in *Art Attacks* highlights that *availability* should not be confused with *access*. It is not easy to stumble upon a single webpage amid the "vast quantity of material on the Internet." *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 208 (2003). Although the designs in *Art Attacks* were publicly available to anyone on the Internet, the mere publication to a standalone webpage did not amount to wide dissemination that would have made it easy for the defendants to encounter the designs. 581 F.3d at 1145.

Online platforms like Instagram, Spotify, and YouTube, however, are different from the plaintiffs' webpage in *Art Attacks*. While standalone websites make content available to anyone in the world, digital platforms do that and more. Digital platforms create online communities and actively connect content creators with content consumers. Platforms

like Instagram are designed to facilitate the discovery and sharing of available content by using algorithms to recommend tailored content to consumers. No longer do people have to search for specific content in the vast expanse of the Internet; in today's digital landscape, social media networks and other platforms continually push individualized content to consumers based on each individual's preferences, usage, and habits. And by expanding a content creator's reach, these digital platforms can increase the chances that other people will see—*i.e.,* have access to—the creator's copyrighted content.

Consider the proverbial pajama-clad blogger from the early 2000s who would share his musings on his personal Internet blog while sitting in his mother's basement. Unless someone intentionally searched for that blog website, almost no one (except perhaps his hapless mother who encouraged him to go outside and find gainful employment) would have likely viewed his blog posts, even though theoretically they were available to everyone. But in the age of Twitter/X and other content-sharing platforms, that erstwhile blogger's reach could multiply dramatically as others' "views" and "likes" on Twitter/X may push his posts to a larger audience under that platform's algorithm. Indeed, content from an ordinary person with a few followers can now go "viral" and reach millions of people.

It is no wonder why, then, in the "digitally interconnected world" of online platforms "the concept of 'access' is increasingly diluted." *Skidmore*, 952 F.3d at 1068. To sum up, social media and other digital-sharing platforms could make it easier for plaintiffs to show that defendants had access to their materials—but only *if* they can show that the defendants had a reasonable chance of seeing their work under that platform's algorithm or content-

sharing policy.  That is a big "if"—and, as explained below, Woodland has fallen short here.

### B. Woodland fails to plausibly plead that Hill had "access" to his Instagram photos.

While Instagram may make a user's content more widely accessible, it is not enough to simply allege that Hill is an active user of Instagram and thus had a reasonable possibility of viewing Woodland's photos.  As the district court explained, there are over a billion users and many more posts on Instagram.  The mere fact that Hill uses Instagram and that Woodland's photos are on Instagram raises no more than a "bare possibility" that Hill viewed Woodland's photos.  *Art Attacks*, 581 F.3d at 1143.

Perhaps recognizing this reality, Woodland offers a chain of events to bolster his claim that Hill had a reasonable possibility of viewing Woodland's photos on Instagram. Woodland contends that Instagram's recommendation algorithm increased the chances that Hill viewed Woodland's works.  According to Woodland, because the content that Hill and Woodland post to their respective Instagram profiles "shares in sub-genres of similar content, involving artistic nude Black male modeling," Instagram's algorithm would likely have recommended Woodland's posts to Hill.  Woodland asks us to take judicial notice of various informational pages published by Instagram to support this theory.

But Woodland's theory is rooted in speculation.  Even if we took judicial notice and accepted the information as true, Instagram's purported policy does not support Woodland's theory.  None of the documents support the contention that similar profile content alone would cause Instagram to promote a profile's posts to users.  *See, e.g.*, *How Instagram*

*Feed            Works*,            INSTAGRAM,
https://help.instagram.com/1986234648360433/ (last visited
May 8, 2025). Rather, Woodland's sources explain that
Instagram suggests posts based on the accounts that users
follow; the posts users like, share, and comment on; users'
history of connecting with accounts; and how popular a
particular post is and how others have interacted with that
post. *See id.* We need not decide today what precise facts a
plaintiff must allege about a digital platform's algorithm or
content-sharing policy to show "access." But we can say
that Woodland has not sufficiently pleaded that Hill had
access to his Instagram photos, given that he does not
plausibly allege that Hill followed, liked, or otherwise
interacted with posts or accounts connected to or similar to
Woodland. And because Woodland has failed to show
access, he has not adequately alleged copying.

## C. Woodland cannot shore up his copying claim by alleging "serial infringement."

Undeterred by his failure to show access (and thus
copying), Woodland says that we must not miss the forest
for the trees and contends that this is a case of "serial
infringement." Hill allegedly copied not one or two of
Woodland's photos, but twelve. The sheer number of
allegedly similar photos, Woodland says, raises an inference
of copying that helps his claim survive the motion to dismiss.

Woodland does not cite the Copyright Act or any of this
court's precedent to support the idea that alleging multiple
copied works helps plaintiffs state a copyright infringement
claim. Nor can we find any. His argument also fails as a
logical matter. Even assuming Hill's works share
similarities with Woodland's, that does not necessarily show
access. The mere existence of multiple works does not prove

access. When there is no direct evidence of copying, a plaintiff must meet his burden by either pleading wide dissemination or a chain of events that raises a reasonable possibility that the defendant viewed the work. Woodland has done neither.

## II. Woodland also fails to show unlawful appropriation.

Woodland's copyright claim falters for another reason: he has failed to show unlawful appropriation because none of Hill's photographs are substantially similar to Woodland's.

### A. Woodland must show that the selection and arrangement of the objective elements of his photographs—not the individual elements in isolation—are substantially similar to Hill's.

To show unlawful appropriation, a plaintiff "must demonstrate that the works share *substantial* similarities." *Hanagami*, 85 F.4th at 941 (emphasis in original). "Our circuit uses a two-part test to assess substantial similarity:" (1) the extrinsic test, which compares objective similarities in protectable expression, and (2) the intrinsic test, which evaluates similarity from the point of view of a reasonable observer. *Id.* While "the intrinsic test is reserved exclusively for the trier of fact," *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018), the extrinsic test "may be decided by the court as a matter of law," *Rentmeester*, 883 F.3d at 1118 (citing *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 319 (9th Cir. 1987)). And because a plaintiff must satisfy both the extrinsic and intrinsic tests, failure to meet the extrinsic test is fatal. *See id*.

Only copying of protectable expression leads to unlawful appropriation, so the first step in the extrinsic test is to "distinguish between the protected and unprotected material in a plaintiff's work." *Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022) (quoting *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)). Photographs are not easily "dissected into protected and unprotected elements." *Rentmeester*, 883 F.3d at 1119. To start, we look to the "objective elements that reflect the various creative choices the photographer made in composing the image—choices related to subject matter, pose, lighting, camera angle, depth of field, and the like." *Id.*; *see also Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1077 (9th Cir. 2000) (discussing objective elements of a photograph).

Contrary to Woodland's assertions, the individual elements in photographs—the poses, lighting, costumes, and makeup—are not themselves protected from infringement. Rather, we held in *Rentmeester* that when viewed in isolation, these objective elements—even "highly original elements"—are unprotected. 883 F.3d at 1119. Rather, "[w]hat *is* protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements. If sufficiently original, the combination of subject matter, pose, camera angle, etc., receives protection, not any of the individual elements standing alone." *Id.* (emphasis in original). Thus, "[a] second photographer is free to borrow any of the individual elements featured in a copyrighted photograph, 'so long as the competing work does not feature the same selection and arrangement' of those elements." *Id.* at 1120 (quoting *Feist*, 499 U.S. at 349).

We do not have a "well-defined standard for assessing when similarity in selection and arrangement becomes

'substantial,'" *Rentmeester*, 883 F.3d at 1121, but the result in *Rentmeester* is instructive. In *Rentmeester*, which was also decided on a motion to dismiss, the plaintiff sued Nike for infringing his photo of "Michael Jordan in a leaping pose inspired by ballet's *grand jeté*." *Id.* The court determined that while Nike had borrowed the "general idea or concept embodied in the [plaintiff's] photo"—Michael Jordan in a leaping, *grand jeté*-inspired pose—Nike "produced an image that differs from Rentmeester's photo in more than just minor details."[4] *Id.* at 1121. We noted differences in the positions of Jordan's limbs, the backgrounds and foregrounds, the presence or lack of sun, and the position of the basketball hoop and Jordan's body in the frame. *Id.* at 1121–22. The photos were "as a matter of law not substantially similar." *Id.* at 1125.

Woodland tries to distinguish *Rentmeester* from this case. He says that unlike here, once Michael Jordan's image was filtered out of the photos in *Rentmeester*, no similarities remained. But that is true here, where any likeness in Woodland's and Hill's works is found largely in the subjects' poses. He also points out that *Rentmeester* limited its holding to photographs of "recognizable subject matter." 883 F.3d at 1120 n.2. We used "recognizable" to distinguish

---

[4] Woodland unsuccessfully argues that the district court erroneously focused on the differences between Hill's and Woodland's photographs rather than their similarities. True, courts may not excuse substantial similarity by later pointing out differences between the works. *See L.A. Printex Inds., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012) ("[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936))). But as we did in *Rentmeester*, courts may identify differences in the works to explain why there is no substantial similarity.

subject matter found in reality from "abstract photographic works" that cannot be readily recognized as "facts." *See id.* at 1120, 1120 n.2. We did not use recognizable as a synonym for a public figure as Woodland suggests.




Rentmeester's photograph            Nike's photograph

Ultimately, the "photos' selection and arrangement of elements must be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'" *Rentmeester*, 883 F.3d at 1121 (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (Hand, J.)).

### B. None of Hill's works are substantially similar to Woodland's.

Because Hill's photos share few similarities with Woodland's—and certainly no more similarities than shared by Nike's and Rentmeester's photos—none are substantially similar.



Woodland's photograph                    Hill's photograph

To start with Woodland's work titled "Lit by Larimer," Hill's photograph shares almost nothing in common with Woodland's. The photos both depict a Black man folded in on himself, but the similarities stop there. The objective elements in the photos—the men's poses, colors, lighting, backgrounds, etc.—are different, and so the selection and arrangement of these elements also widely differ.



Woodland's photograph                    Hill's photograph

Hill's allegedly infringing photo here does not share substantial similarity with the selection and arrangement of features in Woodland's work "Horizon." The

commonalities go no further than the depiction of a man reclining on his side with certain body parts strategically covered—a common pose in photos of male models and actors. In any event, the models' specific poses differ, particularly in the placement of arms and hands. Additionally, the backgrounds, colors, lighting, perspectives, and accessories on the main subject vary widely.



Woodland's photograph          Hill's photograph

Woodland's work "Morning Fog" and Hill's photo do not share substantial similarities, either. Granted, the photos both portray a naked Black man with a bright light obscuring his groin in front of a blue sky-like background, but the way that idea is expressed in the selection and arrangement of elements is not similar. There are other differences: (1) the positioning of arms, (2) Hill's face is visible, while Woodland's is obscured, and (3) Hill's skin glistens, while Woodland is surrounded by blue shadow.



Woodland's photographs



Hill's photograph

None of Woodland's photos depicting a subject draped in chains—"Unknown Soulja," "Bound Not Broken," and "Juneteenth" (top row)—share substantial similarities with Hill's photo of himself wrapped in chains. The idea in each of the photos is the same—the provocative image of a Black man in chains. But that idea is not protected—indeed, it is a common motif in many pieces of art. Only the expression through the selection and arrangement of objective elements

receives copyright protection. And in looking at the selection and arrangement, we conclude there is little in common. The physical features of the subjects, arrangements of the chains, backgrounds, lighting, angles, colors, and positions of the subjects in the frames all differ.



Woodland's photograph          Hill's photograph

The only similarity between Woodland's work titled "To the Moon" and Hill's photo is the depiction of a man in an atmospheric setting with his head angled away from the camera and feet nearer to the viewer. In all other respects, the photos differ in color, subject, pose, lighting, spacing, and background.



Woodland's photograph                    Hill's photograph

These two photos do not share substantial similarity. Woodland's subject seems to be lying back or falling onto a cloth-covered surface.   Sure, Hill positioned his arms similarly to those of Woodland's subject, who is also a Black man with feet near the viewer, but the left arm of Woodland's subject cuts out of frame at the elbow.  Hill's facial expression and the position of his lower body differ from that of Woodland's subject, and none of the other elements in the photo—background, lighting, angle, and color—are similar.



Woodland's photograph            Hill's photograph

Woodland's work "Tiedye" and Hill's photo share nothing in common beyond depicting a man standing with arms outstretched—an unprotectable idea.   When the expression of that idea varies so widely in nearly all respects (as here), there is no substantial similarity.



Woodland's photograph                    Hill's photograph

Woodland's photo titled "Polkadot Pose" has little in common with Hill's photo other than that each photo shows a naked Black man whose front body is hidden from view. The poses, backgrounds, colors, lighting, angles, and accessories on the main subject are different.



Woodland's photographs



Hill's photograph

While Hill's work shares some elements in common with Woodland's photos "SEE SAW" and "At Rest," these similarities do not rise to the level of substantial similarity. Unlike Hill, Woodland's subject in SEE SAW has folded his arms across his chest, and his right knee is folded at a sharp angle. The subject is in front of a yellow wall and a white door, resting on a stool, and the bottom of the subject's body is in shadow. Hill's body, by contrast, is glistening and none of him is in shadow.

Woodland's subject in At Rest has bent his left knee instead of his right. In further contrast to Hill's photo, the subject is lying on a stool covered with a sheet. The light in Woodland's photo is above the subject and creates shadows, while Hill's photo does not feature a source of light. Both of Woodland's photos are realistic, while the setting of Hill's photo features fantastical elements. In sum, as in *Rentmeester*, these differences—despite some similarities in the photos—are dispositive, and Woodland has failed to show that Hill unlawfully appropriated his photos. *See* 883 F.3d at 1121.

## CONCLUSION

We **AFFIRM** the district court's order granting the motion to dismiss Woodland's second amended complaint without leave to amend.